SAULMAN *v.* MAYOR AND CITY COUNCIL OF NASHVILLE.[*]

(*Nashville.*  December Term, 1914.)

**MUNICIPAL CORPORATIONS.** ·Performance of private function. Operation of electric plant.  Liability for negligence.

A city, owning and operating an electric plant, as authorized by Acts 1891, ch. 207, and Acts 1901, ch. 11, though only to light its streets and municipal buildings, is engaging in performing a private function; and hence the rule of *respondeat superior* applies to it, so as to render it liable for negligent construction and maintenance of a heavily charged wire, which by coming in contact with a guy wire attached to a telephone pole caused the death of a lineman employed by the telephone company.

Acts cited and construed:  Acts 1891, ch. 207; Acts 1901, ch. 11.

Cases cited and approved:  Smith v. Dixie Park & Amusement Co., 128 Tenn., 112; Russell v. Men of Devon County, 2 T. R., 667; Moodalay v. Morton, 1 Bro. Ch., 469; Barron v. Detroit, 94 Mich., 601; Davoust v. Alameda, 149 Cal., 69; Bullmaster v. St. Joseph, 70 Mo. App., 60; Boothe v. Fulton, 85 Mo. App., 19; Rhobidas v. City of Concord, 70 N. H., 90; Brown v. Salt Lake City, 33 Utah, 222; Humes v. Mayor of Knoxville, 20 Tenn., 402; Knoxville v. Harth et al., 105 Tenn., 436; Mayor of Memphis v. Lasser, 28 Tenn., 757; Mayor, etc., of Nashville v. Brown, 56 Tenn., 1; Mayor of Knoxville, etc., v. Bell, 80 Tenn., 157; Oliver v. Nashville, 106 Tenn., 273; Doyle v. Chattanooga, 128 Tenn., 433; Memphis v. Kimbrough, 59 Tenn., 133; Foster v. Water Co., 71 Tenn., 42; Davis v. Knoxville,

---

[*]As to municipal liability for injuries by electric wires and appliances, see note in 20 L. R. A. (N. S.), 648.

Upon the duty of a municipality to prevent contact of wires carrying electric current in highway, see note in 52 L. R. A. (N. S.), 590.

90 Tenn., 600; Irvine v. Chattanooga, 101 Tenn., 291; Chattanooga v. Reid, 103 Tenn., 616; Provine v. Seattle, 59 Wash., 681; Toledo v. Cone, 41 Ohio St., 149.

Cases cited and distinguished: Irvine v. Greenwood, 89 S. C., 511; Johnson v. Somerville, 195 Mass., 370; Yarborough v. Bank of England, 16 East, 6.

## FROM DAVIDSON.

Appeal from the Circuit Court of Davidson County to the Court of Civil Appeals, and by *certiorari* from the Court of Civil Appeals to the Supreme Court.— Thomas E. Matthews, Judge.

Pendleton & DeWitt, for plaintiff.

A. G. Ewing and F. M. Garard, for defendant.

Mr. Justice Buchanan delivered the opinion of the Court.

The question on which this case turns is whether, under its facts, the city. was, at the time of the acts on which its liability is predicated, engaged in the performance of a governmental function or a private one. The case is before us on *certiorari*. The court of civil appeals held that the city was engaged in the discharge of a governmental function.

The liability of the city is predicated upon the negligent construction and maintenance of a heavily charged electric light wire, which, on account of such

negligence, came into contact with a guy wire attached to one of the poles of a telephone company, and charged the guy wire with a deadly current of electricity, which was communicated to the body of the intestate of the administratrix, and caused his death, when he attempted, in the exercise of due care, to ascend the telephone pole in the discharge of his duties as a lineman in the employ of the telephone company. No question is made by the city against the judgment of the court of civil appeals; the case being before us solely on the petition and assignments of error filed by the administratrix.

The following facts appear without dispute: The municipal defendant, prior to and at the time of the injury to plaintiff's intestate, was authorized by its charter to build or purchase, own, and operate electric light works, for the purpose of lighting public buildings or streets, or other public places in the city, and for the sale of electric current to all persons desiring to purchase the same, either for lighting, heating, or power, or for any purpose whatsoever. This authority was vested in the defendant under chapter 207, Acts 1891, and chapter 11, Acts 1901, and pursuant to this authority the city, at the time of the injury, owned, controlled, and was operating an electric light works, plant, or system, and the wire, which was so constructed and maintained that it was the cause of the injury to plaintiff's intestate, was a part of the system, plant, or works so owned and operated by the city. But at the time of the injury the

city was not and had not been engaged in the sale of electric current or the furnishing of electric lights to private consumers, and the current generated by the city was used exclusively for the purpose of lighting the streets, fire halls, and public buildings of the city. That the injury was caused by the negligence of the municipal defendant in the original suspension and subsequent maintenance of the wire owned by the city which came into contact with the guy wire of the telephone company is a fact undisputed and settled by the verdict of the jury. It is manifest that the communication of the deadly current from the wire of the city to the guy wire was the result of friction which destroyed the insulation of the city's wire. It is also clear that at the time of the fatal injury plaintiff's intestate was rightfully upon the pole owned by his employer in the discharge of his duties, and in no sense a bare licensee or trespasser, and the verdict of the jury settled the fact that he was free from contributory negligence at the time of his injury.

Originally plaintiff's suit in this cause was brought against the telephone company and the municipal defendant as joint tort-feasors, but subsequent to the origin of the suit the telephone company, by payment of a sum certain to plaintiff and taking from her a covenant not to further prosecute her suit against it, in the form approved in our recent case (*Smith* v. *Dixie Park & Amusement Co.*, 128 Tenn. [1 Thomp.], 112, 157 S. W., 900), discharged its liability, and that branch of the case is not before us now.

Passing, now, to the single issue of law arising upon the facts, we observe in the outset that, since the decision in *Russell* v. *Men of Devon County,* 2 T. R., 667, it has been settled at common law that liability does not exist against a political subdivision of the State, based upon the misconduct or nonfeasance of public officers, in favor of an individual, and in the cases which undertook to give a reason for the rule it was held to be better that the individual should suffer than that he should be allowed to inflict on the public the inconvenience of affording him redress. Other reasons were given by later cases.

But in *Moodalay* v. *Morton,* 1 Bro. Ch., 469, the Master of the Rolls, while admitting the rule, denied that the defendants fell within it. "They have rights," said he, "as a sovereign power; they have also duties as individuals. If they enter into bonds in India, the sums secured may be recovered here. So, in this case, as a private company they have entered into a private contract, to which they must be liable."

From this slight relaxation of the original rule, exceptions to it have grown up, until, on examination of the reported cases, they appear to be quite as numerous as applications of the rule. An instructive note reviewing the earlier cases accompanies *Barron* v. *Detroit,* 94 Mich., 601, 54 N. W., 273, 34 Am. St. Rep., 366, 19 L. R. A., 452. In fact, so large has been the ingrafting of exceptions upon the original rule by our American courts that in his excellent work on Munic-

ipal Corporations (volume 4, section 2622) Mr. McQuillan says:

"Yet in every State except South Carolina it is the settled rule that a municipality is liable at common law for its torts in the performance or nonperformance of municipal or corporate duties, as distinguished from governmental duties."

And to sustain the quoted text the author cites *Irvine* v. *Greenwood,* 89 S. C., 511, 72 S. E., 228, 36 L. R. A. (N. S.), 363. And this learned author in the same section adds:

"In other words, where its officers or servants are in the exercise of power conferred upon the municipality for its private benefit or pecuniary profit, and damage results from their negligence or misfeasance, the municipality is liable to the same extent as in the case of private corporations or individuals."

To sustain the text just above set out, the author cites cases from twenty-nine courts of last resort in the United States and one from the supreme court of the United States, and in the same section it is said:

"That while acting in its private capacity a municipality is liable to the same extent as a private corporation or individual [citing *Provine* v. *Seattle,* 59 Wash., 681, 110 Pac., 619; *Toledo* v. *Cone,* 41 Ohio St., 149.] Furthermore, for torts committed by its agents and servants in the performance of corporate or private duties the municipality is liable, whether the tortious act was done negligently or intention-

ally'' (citing *Johnson* v. *Somerville,* 195 Mass., 370, 81 N. E., 268, 10 L. R. A. [N. S.], 715).

In substantial accord with the views above stated are those announced in Dillon on Municipal Corporations (last edition) sections 1665, 1666, 1670, 1671. Coming nearer to the exact question in the present case is what is said by the author last named at section 1670 of his work, as follows:

''Thus, in the case of municipal electric light works, the city is under obligations to exercise reasonable care in constructing and maintaining its poles and wires in the public streets and on private property, and if any person is injured through neglect of the city or its officers, agents, or employees in that respect, the city is liable in damages.''

And, says Mr. McQuillin, in his work on Municipal Corporations (section 2680):

''It is settled beyond dispute that a municipality which operates its own water, electric light, or gas plant acts in a private and not a governmental capacity, and is liable for its negligence in connection therewith.''

See, also, the following authorities: Abbott on Municipal Corporations, section 955; *Davoust* v. *Alameda,* 149 Cal., 69, 84 Pac., 760, 5 L. R. A. (N. S.), 536, and note, 9 Ann. Cas., 847; *Bullmaster* v. *St. Joseph,* 70 Mo. App., 60; *Boothe* v. *Fulton,* 85 Mo. App., 19; *Rhobidas* v. *City of Concord,* 70 N. H., 90, 47 Atl., 82, 51 L. R. A., 381, and note, 85 Am. St. Rep., 604; *Brown* v. *Salt Lake*

*City,* 33 Utah, 222, 93 Pac., 570, 14 L. R. A. (N. S.), 619, 126 Am. St. Rep., 828, 14 Ann. Cas., 1004, and note.

The court of civil appeals in the present case denied the liability of the city upon the ground that, at the time of the injury and prior thereto, the city was using its electric light plant only for the purpose of lighting its streets and municipal buildings, and had not sold any of its electric light current to private consumers. We think it is error to suppose that the sale of part of the electric current which it manufactured was the only way in which the city could derive a corporate emolument from the possession, ownership, and operation of such a plant. Of course, the taking of money from private consumers of its current might be the most uneqivocal proof that the city was deriving corporate emolument as the result of such operation; but this is the utmost significance which such a fact should have in determining the ultimate question. At most, it is but a conclusive badge indicating a private as contradistinguished from a public use. But the absence of such a badge clearly does not convert the user into a private one, nor amount to conclusive proof that such was the character of the user.

The city is a corporate entity, located within the physical boundaries of the State, and existing by virtue of the sovereign will of the State. *"Imperium in imperio."* The city holds an easement in the streets in trust for the convenience of the citizens. "The corporation has the power to grade, macadamize, or do anything else for the improvement of the streets where-

by they may be made to answer the end for which they were designated. *Humes* v. *Mayor of Knoxville,* 1 Humph. (20 Tenn.), 402, 408, 34 Am. Dec., 657. Springing out of this right and power of the corporation is a liability against it for a wanton or negligent failure to use reasonable diligence and care, so to exercise the power as not unnecessarily to injure the property of abutting owners. *Humes* v. *Mayor of Knoxville,* supra; *Knoxville* v. *Harth, et al.,* 105 Tenn. (21 Pick.), 436, 58 S. W., 650, 80 Am. St. Rep., 901.

From the same easement and power over its streets there flows another corporate liability, to wit, for "the wrongful acts and neglects of their servants and agents" which unreasonably expose persons who use the streets for purposes of travel to injury, and where injury results while the traveler was in the exercise of reasonable and ordinary care, or free from contributory negligence. *Mayor of Memphis* v. *Lasser,* 28 Tenn. (9 Humph.), 757; *Mayor, etc., of Nashville* v. *Brown,* 56 Tenn. (9 Heisk.), 1, 24 Am. Rep., 289; *Mayor of Knoxville, etc.,* v. *Bell* 80 Tenn. (12 Lea), 157; *Oliver* v. *Nashville,* 106 Tenn. (22 Pick.), 273, 61 S. W., 89; *Doyle* v. *Chattanooga,* 128 Tenn. (1 Thomp.), 433, 161 S. W., 996.

In the leading case of the line just named (*Memphis* v. *Lasser,* supra), the city sought to avoid liability upon the ground that at the time it performed the act resulting in plaintiff's injury it was engaged in the discharge of a public function or duty, to which the

doctrine of *respondeat superior* did not apply; but the court said, "No," and further:

"All the powers conferred upon a corporation for the local government of a town or city are, in judgment of law, for the private benefit of such corporation, although the public at large may also derive benefit therefrom. And whether the object of a given improvement be to confer a direct benefit or convenience upon the inhabitants of the corporation, as to furnish water facilities or the like, or whether it be to swell the revenues of the corporation, is wholly immaterial. The principle governing the liability of the corporation is precisely the same in both cases. And it is the province of the court to construe and interpret the charter of the corporation, to determine the nature and extent of the powers conferred, and to judge what acts do or do not fall within the legitimate scope of the authority bestowed and the purposes for which it may have been created. The court in this case did not err, therefore, in tacitly assuming as a matter of law that the construction of the work in question was within the scope of the powers conferred and for the private benefit of the corporation."

Further in the opinion, and quoting from Lord Ellenborough in *Yarborough* v. *Bank of England*, 16 East, 6, it was said:

"Whenever a corporation is competent to do, or order to be done, any act on its behalf, it is liable for the consequences of such act, if it be of a tortious nature, and to the prejudice of another."

We think the opinion above quoted from is full negation of every reason advanced in the present case to free the city from liability. To be sure, in *Memphis* v. *Lasser,* the manifest purpose of the city in digging the cistern into which Lasser fell was to furnish water for the extinguishment of fires, while in the present case the purpose for which it maintained the electric wire was to furnish light for its streets and public buildings. If there is any material distinction between the two purposes, which would make for liability in the one and avoid it in the other, we are unable to perceive it.

The reason on which the court of civil appeals bases its holding freeing the city from liability because it did not sell any of its current to private consumers is in conflict with the opinion in the *Lasser Case,* where it is said:

"And whether the object of a given improvement be to confer a direct benefit or convenience upon the inhabitants of the corporation, as to furnish water facilities or the like, or whether it be to swell the revenues of the corporation, is wholly immaterial. The principle governing the liability of the corporation is precisely the same in both cases."

Our case (*Memphis* v. *Kimbrough,* 59 Tenn., [12 Heisk.], 133) presents a case of municipal ownership. There the property owned by the city was a steamboat wharf, on which an iron cylinder was negligently allowed to remain concealed by the water of the river, which had overflowed it. A collision between a steamboat and the cylinder resulted in the sinking of the

boat, and the owner sued the city for damages and re-
covered a judgment, which this court affirmed. It ap-
peared that one of the officers of the city provided for
by its charter, and to be elected, was a wharfmaster;
also that the ordinances of the city required him to keep
the wharf free from obstructions. The city received
money from steamboats for the use of the wharf, but
this fact was clearly not regarded as controlling on
the ultimate question of liability. The court said the
duty imposed on the city by its charter was a corporate
one and not a public one; in respect of the whole public,
its duty was absolute and perfect, and not discretionary
or judicial, in character, and plaintiff had an interest
in the discharge of the duty of the city to keep the
wharf in repair. The wharfmaster was not acting as
a public officer, but as the agent or servant of the cor-
poration, for its benefit and that of the individuals
using the wharf. It is clear that the collection of tolls
for use of the wharf was only a matter of evidence tend-
ing to shed light on the character of the act on which
liability was predicated. That its absence would not
have avoided the liability of the city is manifest from
the long line of cases, beginning with *Memphis* v. *Las-
ser*, supra, where no such fact appears. That our view
of the question is supported by the clear weight of
authoritative English and American decisions we have
no doubt. There are some opposing views in other
jurisdictions, but they are not supported by reason nor
by weight of authority.

We have another line of cases where, on the facts in each, liability of the municipal defendant was denied on the ground that, at the time of the injury complained of, the city was engaged in the discharge of a public function. Some of these cases are *Foster* v. *Water Co.*, 71 Tenn. (3 Lea), 42; *Davis* v. *Knoxville*, 90 Tenn. (6 Pick.), 600, 18 S. W., 254; *Irvine* v. *Chattanooga*, 101 Tenn., 291, 47 S. W., 419; *Chattanooga* v. *Reid*, 103 Tenn., 616, 53 S. W., 937.

The principles governing in those cases do not apply to the facts of this one. Here we have a municipal corporation authorized by its charter to own and operate for its private emolument an electric light plant, and we find it in the exercise of that power, enjoying the franchise conferred upon it by the sovereign State for the private emolument of it as a corporation and of its citizens residing within its local boundaries. We find it and its citizens deriving from the use of the property a private benefit not enjoyed by the general public composing the sovereign State, resident outside the boundaries of the corporate defendant—the same kind of private benefit which the same corporate defendant and its citizens realize from the use of improved streets and other local comforts. Under such conditions as these, the municipal corporation may no more be relieved of liability where by the misfeasance of its servant it places a death trap on a telephone pole than if such a trap had been placed on the street. Its servant was bound to know that, in

the discharge of their duties, the linemen of the telephone company would be under necessity of ascending the pole, just as its servant in charge of its streets is bound to know that travelers are under necessity of using its streets. No material distinction can be drawn, and in either case the violation of implied duty is tortious in its character, and the doctrine of *respondeat superior* applies.

The judgment of the court of civil appeals was erroneous, and will be reversed. The judgment of the circuit court is affirmed.