NASHVILLE TRUST CO. *et al. v.* CITY OF NASHVILLE.

(*Nashville,* December Term, 1944.)

Opinion filed June 9, 1945.

546

GEORGE H. ARMISTEAD, JR., and ARMISTEAD, WALLER, DAVIS & LANSDEN, all of Nashville, for plaintiff Trust Co.

CHARLES G. BLACKARD, of Nashville, for defendant City of Nashville.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This suit was brought by Nashville Trust Company and J. F. Ahearn, executors and testamentary trustees under the will of Robert H. Wright, for damages for the value of a building destroyed by fire. It was alleged that the loss was due to negligence of employees of the city in failing to supply water to a sprinkler system installed in the building. The building was insured, the insurance company paid the loss, and the suit is brought for the use of that company.

The trial judge dismissed the suit apparently on the theory that it was an effort to hold the city liable for negligence in the exercise of a governmental function. The Court of Appeals took a different view and reversed the judgment below and remanded the case for a new trial.

The plaintiffs became delinquent in payment of a charge levied by the city with respect to this sprinkler system and the water was cut off. Plaintiffs paid the charge but employees of the city failed to turn back the water before the fire. Plaintiffs' proof tended to show that the fire would have been extinguished without damage to the building had the sprinkler system been in operation.

At a former day of the term we dismissed the suit because the plaintiffs had failed to prove the value of the building. The Court of Appeals recognized this but thought the omission was an oversight, not due to culpable negligence, and consequently awarded a new trial. We granted a petition to rehear because we preferred to dispose of the case on the merits, it appearing that other suits depended on the outcome of this one and because of the representation of counsel that he understood the value of the building to have been conceded.

A demurrer was filed to the declaration by the city raising the point that the city acted in the premises in a governmental capacity. This demurrer was overruled and the city filed a plea to the declaration. The case coming on to be heard later before a different trial judge, he was of opinion that the city's undertaking was governmental in its nature as heretofore stated.

It is first insisted by the plaintiffs that the action of the first judge in overruling the demurrer was conclusive of this particular matter and binding on the second judge at the subsequent trial. This would doubtless be true if the proof after issue joined had sustained the allegations of the declaration. An order overruling the demurrer, however, does not prevent the court from reaching a contrary conclusion after a plea is interposed and proof heard tending to show allegations of the declaration not sustained. The matter is fully discussed by Judge Hughes in *Chavin* v. *Mayor and City Council of Nashville*, 1 Tenn. Civ. App. 317. The declaration almost in as many words alleged that a contract existed between the city and the property owners whereby the city agreed to sell the latter water for the sprinkler system at a stipulated charge. The proof showed this was not true.

The ordinances of the City, Sections 77, 78, 93 and 94 in the 1941 Code of Nashville, authorized the city to permit property owners to install and connect sprinkler systems with the city water mains. A service charge of 5c per annum per sprinkler head was provided and there were 224 sprinkler heads in this particular building. Authority to enter the premises and inspect the apparatus was reserved to the city. There was no meter on the connection. Under these ordinances a bond is exacted of the owner of the premises so equipped to pro-

tect the city from diversion of the water to other uses than fire protection.

We see no contract to sell water about this arrangement and that is now conceded. The charges above mentioned and the bond are exacted whether any water is used or not and the service charge appears to us nothing more than a reasonable charge to cover the cost of inspections. Plainly periodic inspections are necessary to protect the city from diversion of the water and from loss of the water by leaks in a complicated apparatus of this nature. The ordinances were not before the Court, nor had the facts about the arrangement been developed when the demurrer was overruled.

We pass then to the principal question. It is well settled that the undertaking of a municipal corporation to extinguish fires is a public service, not corporate, and the city is not liable for the negligent acts of its agents in respect to such undertaking. Among our cases are *Burnett* v. *Rudd,* 165 Tenn. 238, 54 S. W. (2d) 718; *Irvine* v. *Chattanooga,* 101 Tenn. 291, 47 S. W. 419; *Foster* v. *Water Co.,* 71 Tenn. 42. Such is the law everywhere.

A municipality operating waterworks pursues that activity in a dual capacity. So far as it undertakes to sell water for private consumption the city engages in commercial venture, functions as any other business corporation, and is liable for the negligence of its employees. In so far, however, as the municipality undertakes to supply water to extinguish fires, it acts in a governmental capacity and cannot be held liable for negligence on the part of its employees. *Lober* v. *Kansas City,* (Mo. Sup.), 74 S. W. (2d) 815; *Miller Grocery Co.* v. *Des Moines,* 195 Iowa 1310, 192 N. W. 306, 28 A. L. R. 815; 6 McQuillen, Municipal Corporations, Sec. 2855. All

the cases appear to be collected in *Lober* v. *Kansas City* just cited, which contains an elaborate review of the authorities.

In authorizing the property owners here to connect a sprinkler system with the water mains, the city had but one object, namely, the prevention of fires. The use of water through this connection was authorized for that single purpose. It does not seem to us that the character of the city's undertaking was altered by the nature of the particular instrumentality to be used for this public purpose.

Whether the city used its own apparatus or used apparatus belonging to the plaintiff to combat a fire did not vary the city's obligation nor liability.

The Court of Appeals expressed the opinion that the city undertook for a consideration to render a special service to the plaintiffs herein and in so doing departed from its governmental status and assumed a corporate character. We do not think that the authorities sustain this proposition.

An incidental charge for a public service does not render the service private or corporate. This question has frequently arisen in jurisdictions where it is held that the removal of garbage by municipalities is a public duty. Although a charge sufficient to cover the cost of the service is made against owners from whose premises refuse is moved, the undertaking is still held to be public in its nature and the City held not liable for the negligence of its employees engaged in that activity. *James* v. *City of Charlotte*, 183 N. C. 630, 112 S. E. 423; *Moulton* v. *Fargo*, 39 N. D. 502, 167 N. W. 717, L R. A. 1918D, 1108. Other cases to like effect are collected in 38 American Jurisprudence, page 271, indicating the test to be whether

the city has undertaken work of a commercial character from which it sought to derive profit.

Clearly the charges made against the plaintiffs here was not related to profit. A large fire might require water of much greater value than the amount exacted, and, as said before, the charge is by no means an exorbitant inspection fee.

We see no special service the city undertook to render plaintiffs. The undertaking of the city was to supply water for fire prevention. The same service was rendered other property owners. The only difference in this service and that rendered others was that the city agreed to supply the water through an instrumentality installed and paid for by the plaintiffs, provided they paid a reasonable fee for inspections of the appliance to prevent waste or diversion.

Counsel refer to *Memphis Power & Light Co.* v. *City of Memphis,* 172 Tenn. 346, 112 S. W. (2d) 817.; *Saulman* v. *City Council of Nashville,* 131 Tenn. 427, 175 S. W. 532, L. R. A. 1915E, 316, Ann. Cas. 1916C, 1254, and other cases which state rather broadly that a municipality operating an electric light plant performs that operation in a private capacity. This, apparently, whether the current is sold to private consumers or not. Without discussion of this broad statement, we are certain that no such rule is applied to the municipality's operation of waterworks in so far as that operation is conducted for the prevention of fires.

Another reason repelling plaintiffs herein is that the city was without power to make a contract by which it would incur liability for the negligence of its employees with reference to extinguishing fires. Such conclusion necessarily results from an application of the principles announced by this Court in *Nashville* v. *Sutherland &*

*Co.,* 92 Tenn. 335, 21 S. W. 674, 19 L. R. A. 619, 36 Am. St. Rep. 88. In that case, in consideration of right of way to lay a sewer pipe, the city undertook to contract and so construct a sewer as to prevent the river from flowing back into the grantor's premises. The Court held that in the absence of express charter power to make such contract it was valid only so far as the city would have been bound by law in the absence of any contract. That so much of the contract as undertook to protect the grantor from damage from backwater was void. In the discussion the Court quoted at length from the case of *Black* v. *City of Columbia,* 19 S. C. 412, 45 Am. Rep. 785. That case was similar to the one before us, a suit for damages for failure of the city to furnish water to extinguish a fire which destroyed the plaintiff's house. The Carolina court said:

"If, as alleged, there was in this case a contract by the officers of the city insuring to the plaintiff an adequate supply of water at all times and under all circumstances, we incline to the opinion that it was a contract restricting the discretion of the municipality, beyond the scope of the charter, and if actually proved, would not support an action against the corporation."

To like effect is *Van Horn* v. *Des Moines,* 63 Iowa 447, 19 N. W. 293, 50 Am. Rep. 750, also quoted and approved in the *Sutherland Case.*

█ Under these authorities a city cannot assume liability for negligence in cases where the law relieves it of liability. In other words, a city is without power to enter into a contract rendering it liable for the negligence of its servants in the exercise of a governmental function.

█ Something is said in the brief of plaintiffs as to the plea interposed by the city after its demurrer was

overruled. This plea was "not guilty." Such pleading was not appropriate if this be regarded as an action for breach of contract. However, no. objection was made to the plea in the court below and an unsuccessful plaintiff cannot for the first time in the appellate court make the point that a case was tried without issue joined. *Winn* v. *Fidelity Mutual Life Association,* 100 Tenn. 360, 47 S. W. 93, and authorities cited.

The judgment of the Court of Appeals is reversed and that of the circuit court is affirmed.

NOTE.—We have not overlooked *Gordon & Ferguson* v. *Doran,* 100 Minn, 343, 111 N. W. 272, 8 L. R. A. (N. S.), 1049, relied on by counsel for the plaintiffs. In that case the court sustained the right of the City of Saint Paul to assess an impartial charge against the owner of property equipped with a sprinkler system although the particular charge was invalidated. No question of the liability of the city for negligence in the matter was involved. If language used in that opinion can be construed to mean that a municipality loses its governmental status under such circumstances, such conclusion conflicts with the authorities cited in our opinion and we prefer to follow the rule of the latter. That is, in cases where the charge is not imposed for profit but incidentally to cover cost of inspection or like outlay.