NASHVILLE ELECTRIC SERVICE *et al. v.* LUNA.

(*Nashville,* December Term, 1946.)

Opinion filed October 6, 1947.

Charles G. Blackard, of Nashville, for Nashville Electric Service.

David M. Keeble, Walker & Hooker and Homer B. Weimar, all of Nashville, for Luna.

Mr. Justice Tomlinson delivered the opinion of the Court.

A horse belonging to Luna, respondent to this petition for *certiorari,* was killed by a high tension electric power wire negligently exposed by an employee of the Electric

Power Board of the City of Nashville, the petitioner for *certiorari*, and hereinafter sometimes referred to as Board. The Court of Appeals affirmed the judgment of the Circuit Court awarding damages stipulated as to amount. By its petition for *certiorari* the Board insists here, as it did in the other Courts, that it operates the electric distribution system, of which this wire was a part, as a governmental function, as distinguished from a proprietary or private function, of a municipality, and hence is not liable for the negligence of its employees.

Because Luna concedes that the Board is not liable in this case if it operates this system as a governmental function, the parties in this and the other courts have presented for determination only the question of whether this electric distribution system is being operated in a proprietary capacity, or in a governmental capacity. It is stated by the litigants that suits based upon alleged negligence of the Board through its employees, and allegedly involving large amounts of damages, are pending and that this is a test case. For this reason other lawyers have been allowed to enter this case as *amicus curiae* and have joined in the brief of respondent.

If we should grant this writ and eventually reverse the Circuit Court and the Court of Appeals by holding that this electric power system is operated as a governmental function it might still be doubtful as to whether such holding would be a conclusive precedent against liability in the pending suits referred to because of the provisions of the Private Act which creates this Board and the ordinance pursuant thereto, and our holdings in *Rogers* v. *Butler*, 170 Tenn. 125, 128, 129, 92 S. W. (2d) 414. This Board was created by Chapter 262, Private Acts of 1939, as an amendment to the charter of Nashville. Section 20 of the Act makes it the duty of the Board to likewise set up an

insurance fund or carry insurance policies to "protect against such liability" resulting from an operation of the system. Pursuant to this statutory provision, Nashville enacted its ordinance No. 1219 wherein by Section 8 thereof it was directed that "adequate public liability insurance" be carried. In this situation and duty of the Board, under our holdings in *Rogers* v. *Butler, supra*, liability might follow negligence and resulting damage even though the operation of this electric power system should be held to be the performance of a governmental duty. However, out of deference to the very able, earnest and thorough briefs of counsel on either side, we pretermit that question in the instant case so as to consider the sole question presented by those briefs; to-wit, whether this power system is being operated as a governmental function, or in a private capacity.

The Electric Power Board of the City of Nashville furnishes electric current at fixed rates of pay to such of the inhabitants of that city and of Davidson County as desire its current for lighting or power in the homes or places of business. It also furnishes current as desired to the City of Nashville at the same rates of pay as charged individuals or corporation users in the same class. Its system extends to certain communities in adjoining counties, and in all it serves twenty-one communities outside of Nashville.

With this fact in mind, it is necessary to first determine whether it furnishes this service as an agent of Tennessee, as insisted by the Board, or as an agent of the City of Nashville, as respondent Luna insists. This Board was created by Private Act of 1939, Chapter 262. This statute is an amendment to the charter of Nashville. It first authorizes Nashville to acquire and operate an electric light and power system within and without its corporate

limts. Then it creates the Power Board in question and then in Section 16 gives this Board exclusive management and control of the operation "of said electric power plant and/or distribution system." The plant or system referred to is necessarily the one which City of Nashville is authorized by Section 2 of the statute to acquire and operate. The members of the Board are selected by specified officials of Nashville. They must be taxpayers of that city. Ouster proceedings against any of these members on appropriate occasions must be instituted by the mayor of Nashville. Title to the power system must be in the name of the city. The system cannot be disposed of except by appropriate action of the city and the city may issue its general obligation bonds (though it has not done so) to the extent of $12,000,000 in payment on the purchase price of the plant. The revenues will be deposited in the name of the city to its special account, but all surplus after payment of revenue bonds, operating expenses, etc., may be used only to reduce rates at which electricity is furnished to those desiring it. The Board must file semiannual accounting statements to designated officials of the city. Other duties to the city might be pointed out but the above suffice to make necessary the conclusion that the Power Board operates as an agent of the city, and not as a separate governmental agency of the State.

█ So the recurring question is whether the municipality of Nashville operates this system in its governmental or its proprietary capacity? There is no hard and fast rule by which the private functions of a city are distinquished from its governmental functions. Each case has necessarily been determined on principle as it has arisen. *Saulman* v. *City Council of Nashville*, decided in 1915, reported in 131 Tenn. 427, at page 433, 175 S. W. 532,

at page 534, L. R. A. 1915E, 316, Ann. Cas. 1916C, 1254 held that: "It is settled beyond dispute that a municipality which operates its own water, electric light, or gas plant acts in a private and not a governmental capacity, and is liable for its negligence in connection therewith." This holding was reaffirmed in *Memphis Power & Light Co. v. City of Memphis,* decided in 1937, and reported in 172 Tenn. 346, at page 356, 112 S. W. (2d) 817, at page 820, wherein this Court said: "Complainant predicates its attack upon the false premise that a municipality, in constructing and operating an electric lighting plant, is engaging in a governmental function, whereas the almost universal rule is that in so doing it acts in a private or business capacity." In the opinion of this Court written by CHIEF JUSTICE GREEN in 1944 in the case of *Nashville Trust Co. v. City of Nashville,* 182 Tenn. 545, 188 S. W. (2d) 342, comment upon the holding in the *Saulman Case* and in the *Memphis Power and Light Co. Case* is as follows: "Counsel refer to *Memphis Power & Light Co. v. City of Memphis,* 172 Tenn. 346, 112 S. W. (2d) 817; *Saulman v. City Council of Nashville,* 131 Tenn. 427, 175 S. W. 532, L. R. A. 1915E, 316, Ann. Cas. 1916C, 1254, and other cases which state rather broadly that a municipality operating an electric light plant performs that operation in a private capacity. This, apparently, whether the current is sold to private consumers or not. Without discussion of this broad statement, we are certain that no such rule is applied to the municipality's operation of waterworks in so far as that operation is conducted for the prevention of 'fires." 182 Tenn. at page 551, 188 S. W. (2d) at page 344.

That was a case in which the question was whether the operation of a waterworks by a municipality was a governmental or a proprietary function. This Court held that: "So far as it undertakes to sell water for pri-

vate consumption the city engages in a commercial venture, functions as any other business corporation, and is liable for the negligence of its employees." Thus, while *Nashville Trust Co.* v. *City of Nashville* may raise a question as to the limit of the holding in the *Saulman Case* and the *Memphis Power & Light Co. Case, supra,* nevertheless, it in substance affirms the principle declared to be the law in those two cases in their holding that a municipality in operating an electric power system, in so far as it sells electricity for private consumption, "engages in a commercial venture, functions as any other business corporation, and is liable for the negligence of its employees." Perhaps the holding is grounded upon the principle stated in our case of *Connelly* v. *City of Nashville,* 100 Tenn. 262, 46 S. W. 565, wherein this Court said: "The authorities recognize the difference between governmental duties, or those duties the municipality owes the public, *and corporate or ministerial duties, in the discharge of which the individual citizen is interested.*" 100 Tenn. at page 263, 46 S. W. at page 566. (The emphasis is ours.) The furnishing of electric current for power in the operation of a business for the lighting of a home, for the use of articles of luxury, or of individual necessity would seem to be an act in which the citizen as an individual is interested, rather than one owed the public by the municipality. However that may be, it is settled beyond doubt by our cases that in the absence of statute to the contrary a municipality in Tennessee is engaged in a proprietary or ministerial duty in operating an electric system for sale of electricity to individuals for private consumption. The necessary result is that the decisions of courts of sister jurisdictions based upon their statutes or otherwise can not be of even persuasive influence in this state. Nor is this function changed from

proprietary to governmental by reason of the fact that such service is extended to points outside the boundaries of the municipality. The text of 38 American Jurisprudance at page 259 states it thus: *"In these cases, the courts frequently take the view that in operating public utilities, municipalities are acting in a proprietary or business capacity and stand upon the same footing as a private business corporation similarly situated.* Statutes allowing a municipal corporation to extend its service outside the corporate limits have generally been held Constitutional." (Emphasis is ours.) This practice was commended in the case of *Johnson City* v. *Weeks,* 133 Tenn. 277, 180 S. W. 327, 3 A. L. R. 1431, wherein this Court said: "Fringing the boundaries of a city or town, there is nearly always a population that is dependent for advantages of water and light on the initiative and enterprise of the city or town of which it comes so near to being an integral part." 133 Tenn. at page 284, 180 S. W. at page 329.

Petitioner Power Board says, however, that the operation by a municipality in Tennessee of an electric power system has been made a municipal governmental function by Section 3 of Chapter 33, Public Acts of 1935, 1st Extra Session. That section reads as follows: "Declaration of Policy. Be it further enacted, that it is hereby declared to be the policy of this State that any municipality acquiring, purchasing, constructing, reconstructing, improving, bettering or extending any public works *pursuant to this Act,* shall manage such public works in the most efficient manner consistent with sound economy and public advantage to the end that the services of the public works shall be furnished to consumers at the lowest possible cost. No municipality shall operate such public works for gain or profit or primarily as a source

of revenue to the municipality, but shall operate such public works for the use and benefit of the consumer served by such public works and for the promotion of the welfare and for the improvement of the health and safety of the inhabitants of the municipality.'' (The emphasis is ours.)

One fallacy of this insistence is that Nashville did not acquire this electric system by virtue of the authority given under the 1935 statute; nor is the petitioner Power Board operating by virtue of the authority therein given. The Electric Power System in question was acquired by the City of Nashville by authority of Chapter 262, Private Acts of 1939. The Board created by this act operates the electric power system in question under the provisions of and in accordance with the authority of this 1939 statute. It is true that the ordinance of the City of Nashville directing the issuance of $15,000,000 of Revenue Bonds of this power system with which to pay the purchase price of the system recites that the city is authorized by the Constitution of Tennessee, the charter of Nashville, including the Act of 1939, and Chapter 33 of the Public Acts of 1935, 1st Extra Session, as amended, to purchase and operate an electric light and power plant and distribution system. However, recitation of the fact that the 1935 Public Statute, among other identified statutes, authorizes Nashville to acquire and operate an electric power system does not alter the fact that Nashville elected to acquire and operate the system under the special statute enacted in 1939 for that specific purpose. As a further part of its preamble this ordinance recites that it is authorized by its City Charter, and the acts amendatory thereof and supplemental thereto (Special Act of 1939) and the other statutes cited in the first preamble ''to borrow money and issue bonds to acquire said sys-

tem.'' This ordinance then recites certain resolutions and actions of the ''Electric Power Board of the City of Nashville,'' being the board created by said Chapter 262, Acts of 1939, and certain resolutions of the Mayor and Board of Public Works of the City of Nashville as authorized in said 1939 Act, and then ordains the issuance of the revenue bonds heretofore referred to for the purpose of acquiring and operating said system. With utmost deference to the earnest and able insistence of learned counsel for petitioner to the contrary, it is our conclusion that the very passage of Chapter 262, Acts of 1939, and the ordinance referred to on its face reflects an intention to acquire and operate, and did acquire and does operate said system in question under the provisions of its charter as amended by said Chapter 262, Acts of 1939, rather than under the authority of Chapter 33 of the Acts of 1935, 1st Extra Session, as amended.

Reference then must be made to the 1939 Act under which Nashville acquired and operates this power system in order to ascertain whether that statute altered or attempted to alter our common-law rule as declared in the *Saulman Case, supra,* and the *Memphis Power and Light Co. Case, supra,* and reaffirmed as to the principle involved in the *Nashville Trust Co.* v. *City of Nashville, supra,* to the effect that a municipality in operating an electric power plant to sell electric current for private consumption is acting in a proprietary capacity, rather than in a governmental capacity.

The first sentence of Section 2 of Chapter 262 of the Acts of 1939 is as follows: ''Be it further enacted, that the City of Nashville, *in its corporate capacity,* is hereby authorized and empowered:'' And the first sentence of Section 24 of the Act is: ''That the City of Nashville be, and it is hereby authorized, *in its corporate*

*capacity,* to issue and sell its bonds . . ." (Emphasis is ours.) Counsel for petitioner insists that the expression "corporate capacity" as used in this statute does not mean or imply that the municipality is acting in a proprietary capacity in the operation of this electric system and insists that "there is a difference between 'corporate capacity' and 'corporate function,'" and that a municipality does its every act not only in its "corporate capacity" but in "a dual function," to-wit, (1) proprietary and (2) governmental. As an illustration of the soundness of his insistence petitioner says that a municipality operates its fire department in its corporate capacity, but in doing so performs a governmental function. The bench and bar have never ascribed to the expression "corporate capacity" the meaning thus sought to be given it here by petitioner. So, it is not logical, we think, to hold that the legislature intended to so depart from the generally accepted meaning of this expression, when it provided that Nashville is authorized and empowered to acquire and operate this power system "in its corporate capacity." In *Saulman* v. *City Council of Nashville, supra,* this Court defined the private duties of a municipality as those which are "municipal or corporate duties, as distinguished from governmental duties." 131 Tenn. at page 432, 175 S. W. at page 533, L. R. A. 1915E, 316, Ann. Cas. 1916C, 1254. In *Connelly* v. *City of Nashville, supra,* this Court in discussing the dual nature of a municipality used the expression "corporate or ministerial duties" in defining those which were not governmental duties. 100 Tenn. at page 263, 46 S. W. at page 566. In *Mayor, etc., of City of Memphis* v. *Kimbrough,* 59 Tenn. 133, 136, this Court used the expression "corporate powers" as being those to which the maxim of *respondeat superior* apply to a municipality. In *Boyd*

v. *City of Knoxville*, 171 Tenn. 401, 405, 104 S. W. (2d) 419, 420, this Court in holding the city liable for damages resulting from the negligent maintenance of its streets used the expression "in its corporate capacity" in giving the reason why the maxim of *respondeat superior* applied. So, might the illustrations be indefinitely increased. The above citations suffice to establish it as a fact that the usual meaning attributed to the expression "corporate capacity" is that capacity in which the municipality is liable for damages resulting from negligence of its employees. The statute in question reflects the fact that its draftsman was a lawyer. It is illogical to think that he used the expression with the intent that it would not be given this usual meaning as understood by a lawyer. That the expression was intended to be given the usual meaning is further confirmed by the fact that the statute itself provided for the carrying of insurance to protect against liabilities which might occur in the operation of the system. Petitioner thinks that the word "liability" as so used, referred to the liabilities under the contract and in connection with social security, old age benefits, retirement insurance, pensions and other like matters. Again we think that the word "liability" is not commonly used in connection with such a class of obligations. Nor is there any expression in this statute which justifies us in holding that the word "liability" as there used was intended to be limited to damages for a nuisance, as insisted by petitioner. The city officials and, indeed, the petitioner power board itself did not construe the provision in the statute as to carrying liability insurance as that Power Board now insists it should be construed. In its ordinance pursuant to this statute, and in the resolution of this petitioner power board, it is directed that in the operation of this power system the city "provide

for adequate public liability insurance." For each and all of the reasons stated, we are unable to agree with this insistence of petitioner as to the meaning to be given the provision with reference to carrying liability insurance.

It is our opinion that this power system was being operated by Nashville through its board in its corporate capacity; that is, in its private or proprietary capacity.

 It is finally insisted that if under Chapter 262 of the Acts of 1939 the operation of this plant by Nashville is in its corporate capacity, that then this Act of 1939 offends Article XI, Section 8 of our State Constitution in that, according to the insistence of petitioner, Chapter 33 of the Public Acts of 1935, 1st Extra Session, makes the operation of an electric power plant a governmental function of a municipality, and, therefore, Chapter 262, Acts of 1939, attempts to suspend this general law by providing that Nashville shall operate its electric power plant in its corporate capacity. Assuming, but not deciding, that Chapter 33 of the Acts of 1935 makes the operation of said power plant under that Act a governmental function of the muncipality, it does not follow that said Chapter 262 of the 1939 Acts violates the constitutional provision referred to. We think the 1935 Act refers only to municipalities operating a power plant under that Act.. The Act so states. However, Chapter 33 does not require any city to operate its plant under that Act. As a matter of fact, many of our municipalities are operating under special Acts, amendatory of their charter, or otherwise. This being true, the provisions of Article XI, Section 8 of the Constitution do not apply, because "there is no constitutional inhibition against special legislation as to municipal corporations," *Tennessee Public Service Co.* v. *City of Knoxville,* 170 Tenn. 40, at page 53, 91 S.

W. S. (2d) 566, 570, unless such special law is contrary to a general law mandatorily applicable to all municipalities alike. *Town of McMinnville* v. *Curtis*, 183 Tenn. 448, 449, 192 S. W. (2d) 998.

The Court of Appeals in affirming the judgment of the Circuit Court awarding Luna damages has written a very able opinion thoroughly covering every insistence made by petitioner here. We concur in this opinion and, therefore, must deny the application for this writ.

All concur.