KILLION *v.* CITY OF PARIS.

(*Jackson,* April Term, 1951.)

Opinion filed June 16, 1951.

Petition to Rehear denied July 27, 1951.

R. H. Rhodes, of Paris, for complainant.

R. L. Dunlap, Jr., and Dudley Porter, City Attorneys of Paris, for defendant.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

The water works plant from which the inhabitants of City of Paris, Tennessee, receive water is owned by the City. In December 1947 the commissioners of this municipality adopted Ordinance No. 215. Its Section 1 fixes the rates to be thereafter charged the inhabitants for water. These rates are upon a sliding scale measured by the amount of water used and upward from a specified minimum charge each month. Section 2 of the Ordinance provides that seventy-five (75c) cents of this charge shall be placed in a sinking fund to be used in payment on all the bonded indebtedness of the City amounting to a total principal of $696,000.00, and due at specified times up to fifty years.

There are two thousand customers of this municipality's Water Works System. Under Section 2 of the ordinance the City will receive from two thousand customers in fifty years the sum of $900,000.00 to pay on principal and interest of this bonded indebtedness. This indebtedness is a general obligation of the City representing nineteen outstanding bond issues issued for various municipal purposes, including water works. The ordinance authorizing these various bond issues provided for the levying of a tax on all the taxable property within the municipality for the payment of principal and interest of these bonds.

Plaintiff-in-error, Killion, filed the bill in this cause wherein he alleged the above stated facts and sought a

decree declaring this ordinance void in its entirety or, in the alternative, insofar as it concerns this seventy-five (75c) cents allocated to the sinking fund for the retirement of the aforestated general indebtednes of the City. This relief is sought under the assertion that because of the provision with reference to the seventy-five (75c) cents the ordinance violates (1) Article 1, Section 8 of our Constitution providing that no one shall be deprived of his property other than by the law of the land, and (2) impairs the obligation of the "bond contracts heretofore made, thereby violating Article 1, Section 20" of our Constitution.

It is insisted that with reference to the alleged violation of Article 1, Section 8, the allocation of this 75c of the charges made each month for water subjects a particular class only, to wit, the consumers of water, to the burden of paying the general bonded indebtedness of the City, and relieves all other taxpayers.

Plaintiff-in-error is a customer of the water works system and is a taxpayer of the City. He does not own any of the bonds mentioned.

Upon an answer admitting all the bill's allegations of fact and denying all of its conclusions of law the Chancellor heard the case on bill and answer and held the ordinance valid in its entirety and dismissed the bill. Killion has appealed.

There is a conspicuous absence from the bill of certain allegations material to the insistences of the complainant upon whom rests the burden of establishing the facts which are prerequisite to the procuring of the relief he seeks. The bill does not allege that the rates charged by the ordinance in question are exorbitant, nor that the portion of the income allocated to the payment of the

City's bonded indebtedness is not a part of the reasonable profits, if the municipality is allowed to make a profit in the carrying on of this business. Nor is there any allegation as to whether the City of Paris acquired this water works system under the authority of the statute carried in Williams' Code commencing at Section 3695.1 or whether it acquired such system independent of said statute, as it might have, *City of Memphis* v. *Memphis Water Co.*, 52 Tenn. 495, 528. If acquired under the statute mentioned the surplus must be used in the improvements, extensions or additions to the system, Sections 3695.14 and 3695.15, Williams' Code. But if otherwise acquired a different rule may apply as to the disposition of the surplus, in the absence of a statutory direction as to such disposition. We know of no such other statutory direction nor are we referred to any by complainant.

By reason of the absence from the bill of the aforementioned allegations the Court is not at liberty to assume that the rates charged were not reasonable; nor that the income allocated to the payment of bonded indebtedness is not from profits. Nor may it be assumed that the authority under which the City of Paris acquired these water works directed the disposition of the profits, if the City is allowed to make a profit.

Insofar as it applies to the sale of water to its private customers a municipality acts in a proprietary rather than a governmental capacity. *Saulman* v. *City Council of Nashville*, 131 Tenn. 427, 433, 175 S. W. 532, L. R. A., 1915E, 316.

An individual or private corporation furnishing water to the inhabitants of a municipality would be expected, of course, to charge for this water at a rate which would net a fair profit over and above the expense

of such operation, upkeep, depreciation, etc. Since the city furnishes this water in its individual capacity it is logical to conclude that it is not illegal for the City to fix such a rate as will net it a reasonable profit, as in the case of any other individual so furnishing such water. In its individual, that is, its proprietary capacity "It has the rights of an individual, and as such, in the exercise of those rights, may enjoy the privileges and immunities, and must bear equal burdens with other citizens of the state", *Smiddy* v. *City of Memphis,* 140 Tenn. 97, 101, 203 S. W. 512, 513, unless otherwise provided by statute.

Though we have been unable to find any Tennessee decision holding one way or the other upon this question of the right of a municipality to make a fair profit in its business of furnishing water to its customers, the right to make such profit seems to be decidedly the majority rule in those jurisdictions in which the question . has arisen, though there are decisions to the contrary. Refer to *Shirk* v. *City of Lancaster,* 313 Pa. 158, 169 A. 557, 90 A. L. R. 688, and the numerous annotations commencing on page 700. Another exceedingly well considered case so holding is *Wagoner* v. *City of Rock Island,* 146 Ill. 139, 34 N. E. 545, 21 L. R. A. 519.

Though it might be very convincingly argued that a municipality ought to furnish this necessity of life to its inhabitants at the lowest cost consistent with the expense of operation and without profit; nevertheless, since the municipality, as an individual, does have the legal right to a fair profit on this business, that appeal is one which must be addressed to the electorate rather than to the Courts.

This suit is, therefore, reduced to the question of whether, in the absence of a showing of statutory prohibition, the profits derived by a municipality from the sale at a reasonable price of water to its customers may be allocated to the payment of municipal debts not connected with or arising from such furnishing of water. Our search has not resulted in the finding of any Tennessee case deciding the question. However, on principle it seems illogical for the Court to be permitted to substitute its judgment for that of the municipal authorities as to what disposition for municipal purposes shall be made of these profits which are the properties of the municipality.

In discussing the question of whether a municipality may divert part of its profits from the operation of water works to municipal purposes other than those of the water works enterprise, 64 C. J. S., Municipal Corporations, Section 2218, page 931, cites cases from a number of jurisdictions in support of this statement: "In the absence of a statutory direction, the governing authorities of a municipal corporation may designate the fund or funds into which income from the operation of a public utility by the municipality shall be paid".

The text of 38 A. J., page 97, Section 404, on the point is this: "In the absence of statute, some authorities have held that funds derived from revenue-producing enterprises cannot be diverted to any other purpose. Other authorities have adopted the view that net revenue derived from a municipally owned utility belongs to the municipality and may be used for any municipal purpose."

The decisions on the point are annotated at some length in 103 A. L. R. commencing at page 579 and 165

A. L. R., pages 859, 862. These decisions demonstrate it to be a fact that the Courts are disagreed about the matter, but the clear majority view is that the allocation of net profits from a municipally owned and operated utility enterprise to purposes other than those connected with the enterprise itself is permissible in the absence of statutory prohibition.

■ This Court agrees with the majority view and holds that in the absence of statutory prohibition a municipality may divert its profits from the sale of water to its customers to municipal purposes other than those of the water works enterprise. Hence, we conclude that the ordinance attacked here is, *under the showing made by this record,* a valid enactment in all respects.

■ Mr. Killion's insistence that this ordinance impairs the City's contractual obligation with reference to the payment of its bonds cannot be considered. Mr. Killion is not the owner of any of these bonds; hence, cannot raise the question.

Affirmed.

All concur.