**CITY OF MEMPHIS and Robert R. Roberts**

v.

**John M. BETTIS et al.**

Supreme Court of Tennessee.

June 3, 1974.

Frierson M. Graves, Jr., Arthur J. Shea, Joseph B. Dailey, Memphis, for petitioners.

Don Owens, Memphis, for respondents.

## OPINION

McCANLESS, Justice.

This case arose out of a collision of two automobiles and an ambulance owned and operated by the City of Memphis and presents the question whether the operation of the ambulance was a governmental or a proprietary function. The Court of Appeals upheld the trial court and held that under the facts the ambulance service was of a proprietary nature, thus depriving the defendant city of governmental immunity. The case is in this Court on the city's petition for certiorari. A brief amicus curiae was filed by the City of Chattanooga in support of the petitioner's position.

The accident in question occurred on July 22, 1971, on Interstate Highway 55 inside the Memphis city limits. The city owned ambulance service had received an emergency call from the home of Margaret I. Nelson, who had become suddenly ill with what appeared to be a heart attack. Miss Nelson's two sisters, Frances N. Bettis and Ruth N. Robinson, accompanied her in the ambulance. The ambulance was in the left lane of the highway with its siren and flashing lights in operation when it came upon a car driven by Susan D. Taylor. The ambulance was forced to slow down to allow time for the Taylor vehicle to move over. Shortly thereafter the

brake lights on the Taylor car came on, and the ambulance collided with the rear of the car. Immediately thereafter a car trailing the ambulance, and being driven by Emma Conner, crashed into the rear of the ambulance. All three sisters were injured in the collision and all are plaintiffs in this suit against the city and the ambulance driver, Robert R. Roberts. John M. Bettis, husband of Frances N. Bettis, joins as a plaintiff seeking damages for loss of services, companionship, and consortium, and for medical expenses occasioned by the injury to his wife.

The case was heard on December 11, 1972, in the Circuit Court of Shelby County, Division Four. Motions for directed verdict made by defendants on the basis of governmental immunity were denied, both at the conclusion of the plaintiffs' proof, and at the conclusion of all the proof. The jury returned a verdict for the plaintiffs, awarding damages totalling $57,000.00. The court denied defendants' motion for a new trial. The Court of Appeals affirmed the judgment. We granted the defendants' petitions for certiorari and briefs have been filed and oral arguments heard.

We observe, first, that the question whether the law of governmental immunity should be retained in Tennessee is not before us in this case. That issue arose in Coffman v. City of Pulaski, 220 Tenn. 642, 422 S.W.2d 429 [1967], in which we upheld the principle of municipal tort immunity and observed that if the immunity were to be abolished, that would be for the legislature and not for the courts to do. The legislature has since passed the Tennessee Government Tort Liability Act [Section 23-3301 et seq., T.C.A.], but it had not become law until after Memphis instituted its ambulance service, and after the suit in this case was filed and tried. While the new statute indicates a willingness on the part of the legislature to alter the law of sovereign immunity, we are bound in this instance by the long established case law.

▇ The issue presented in the case before us, then, is whether the ambulance service in question is "governmental" or "proprietary" in nature. The rule in Tennessee is that a municipality is immune from liability arising from the acts of its agent while carrying out a governmental function; but there is no immunity when the agent commits a tort while carrying out a private or "proprietary" function. Johnson v. City of Jackson, 194 Tenn. 20, 250 S.W.2d 1 [1952].

The distinction between a "governmental" and a "proprietary" function is difficult, and this Court has in the past found that each case must be decided on its own facts. Williams v. Town of Morristown, 32 Tenn.App. 274, 222 S.W.2d 607, modified 189 Tenn. 124, 222 S.W.2d 615 [1949]; Nashville Electric Service v. Luna, 185 Tenn. 175, 204 S.W.2d 529 [1946]. In Williams v. Morristown, supra, we held that "each case must be decided upon its own facts. The purpose and character of the undertaking, and the method of its operation, determine whether it is public or private." 222 S.W.2d at page 610.

The City of Memphis created the emergency ambulance service in 1966. The proof shows that the reason for instituting the service was the failure of private ambulance firms to meet the needs of the citizens for emergency transportation. The ordinance stipulates that city owned ambulances are to be used for emergency calls only. The city charges a fee for each trip, but the balance sheet indicates the service is operating at a loss. Figures for fiscal year, 1971–72, show that the city had twelve units operating at an average cost of each unit of $82,994.57 and that seventy-two men were employed with an average salary of $10,656.00. The total aggregate salary, including benefits, was $909,333.76. Collections on fees during that year, however, totalled only $196,745.75, leaving substantial accounts receivable and a deficit of $798,598.17. The city ap-

propriated $995,334.92 in public funds to meet the cost of operation during that fiscal year.

In looking to the character of the operation, the Court of Appeals placed emphasis on the charging of fees for the service, noting that since the city provided ambulance service "for hire", then the city had gone into "the ambulance business". In short, the collection of revenues from private citizens had rendered this a "proprietary" function of city government.

■ Tennessee case law, however, is to the contrary. This Court has long held that the mere collection of fees from a given service does not *per se* transform an otherwise public function into a private one. E.g., Nashville Trust Co. v. City of Nashville, 182 Tenn. 545, 188 S.W.2d 342 [1944]. Notable among these cases is McMahon v. Baroness Erlanger Hospital, 43 Tenn.App. 128, 306 S.W.2d 41 [1957], cert. denied August 19, 1957. There, the court held that the City of Chattanooga was immune from liability for torts arising out of the operation of a city owned public hospital. The significant factor for purposes of this case is that most of the operating revenue was generated from fees charged to patients and from other sources. Observing this fact, the court said:

"It is clear that this hospital was not operated for profit but at a loss to the City of Chattanooga and Hamilton County, which were required to absorb an annual operating deficit. It is true that about 87% of its operating cost was derived from private pay patients and the operation of Coca-Cola vending machines, the tea room, etc., but that does not deprive it of its character or take away its immunity." 306 S.W.2d at page 45.

This was not the first instance in which the public character of a governmental undertaking had been upheld, despite the charging of fees by the government to support the service rendered. Examples are Johnson v. City of Jackson, supra (maintenance of parking meters held to be a governmental function); Vaughn v. City of Alcoa, 194 Tenn. 449, 251 S.W.2d 304 [1951] (maintenance of city swimming pool for which fees were charged, and which was highly advertised, held to be public, not private); Town of Pulaski v. Ballentine, 152 Tenn. 393, 284 S.W. 370 [1925] (operation of public cemetary held to be governmental function, even though the individuals paid fixed prices for lots). See, generally, 57 Am.Jur.2d, Municipal Corporations, Section 34, page 48.

In Nashville Trust Co. v. City of Nashville, supra, the Court characterized the supplying of water for fire fighting purposes to individual businesses as governmental, even though a fee was charged. "An incidental charge for a public service does not render the service private or corporate", the Court said, adding that the test is "whether the city has undertaken work of a commercial character from which it sought to derive profit."

■ The pecuniary test, then, fails to strip the governmental character from this activity. At the same time, we find positive reasons for holding this particular function to be public rather than private. Like the services rendered by a public hospital (see discussion of McMahon v. Erlanger Hospital, supra), the ambulance service is a necessary function of city government, imposed by the government's basic mandate to protect the health, safety, and welfare of its citizens. As the Court said in the *McMahon* case, quoting 6 McQuillin, Municipal Corporations, Section 2669:

"The duty of a municipal corporation to conserve the public health is governmental, and it is not liable for injuries inflicted while performing such duty. The decisions are practically unanimous in holding that a municipality is not liable for the torts of its board of health or other health officers on *the theory that the duty in regard to preventing sickness*

*or caring for sick people is strictly a governmental or public function."* [Emphasis supplied.]

In light of all the facts, it cannot be validly asserted that this is a commercial venture which the city entered for the purpose of reaping a profit. In fact, the service has incurred a deficit, and a deficit would result even if all its accounts receivable were collected. It was a task undertaken not for the convenience of a few, nor for making money. It was one which the government took upon itself to meet the urgent needs of the general public. See Lucas v. City of Juneau, 168 F.Supp. 195 [D.C. Alaska 1958]. In the recent case of Coffman v. City of Pulaski, supra, we foreshadowed the result we reach here by listing "ambulance services" among those activities of a city government which would be endangered by abrogation of the theory of governmental immunity.

■ The two assignments of error relating to the driver, Robert R. Roberts, are without merit. The first alleges an error in the trial court's instructions to the jury. The error was not alleged in the city's motion for new trial, however, and for that reason it cannot be entertained here. Rule 14(5), Rules of the Tennessee Supreme Court; Cohen v. Cook, 224 Tenn. 729, 462 S.W.2d 499 [1970].

■ The other assignment challenges the conclusions drawn by the jury from the evidence. This Court, however, cannot review the facts and weigh the evidence when there is material evidence to support the jury's verdict. Rule 14(7), Rules of the Tennessee Supreme Court; see Flournoy v. Brown, 216 Tenn. 166, 391 S.W.2d 617 [1965].

■ Governmental employees are personally ·liable for torts they commit, even though engaged at the time in carrying out the activities of the employer. See Eubanks v. Wood, 304 S.W.2d 567 [Tex.Civ. App.1957]; 56 Am.Jur.2d, Municipal Corporations, Section 284, page 333. We, therefore, reverse and dismiss the judgment of the trial court as to the City of Memphis, on the basis of its governmental immunity, but affirm it as to the driver.

DRYER, C. J., CHATTIN and FONES, JJ., and LEECH, Special Justice, concur.

## ON PETITION TO REHEAR

The plaintiffs, who were the defendants in error in the Court of Appeals, have filed an earnest petition to rehear by which they insist that we erred in our failure to grant their motion to strike the petition for certiorari. The motion is in the following language:

"Come now the Respondents and respectfully move the Court to dismiss the Petition for Certiorari filed herein because the Petition does not comply with the Statutory requirements in that the Petitioners make no complaint with respect to the action of the Court of Appeals. Each of the three Assignments as well as the conclusion, complains only of the action of the Trial Court."

The assignments of error included in the petition for certiorari are in the same language as those presented to the Court of Appeals. By each of the assignments the plaintiffs in error complain of an act of the trial court. In their petition for certiorari, however, they said:

"Petitioners, City of Memphis and Robert R. Roberts, feeling aggrieved by the action of the Court of Appeals of Tennessee, in the respects hereinafter shown, respectfully show to the Court:"

The petition also contains this language:

"On appeal the Court of Appeals overruled all of the petitioner's assignments of error and affirmed the judgments for the respondents."

■ When we consider the language of the petition for certiorari that we have

quoted above, along with the assignments filed in the Court of Appeals, and the prayer of the petition "that this Court will enter a judgment reversing the judgment of the Court of Appeals and of the Circuit Court", we find no difficulty in concluding that the petitioners were insisting that the judgment of the Court of Appeals be reversed on the same grounds they had relied on in the Court of Appeals. By their petition they were assigning as error the action of the Court of Appeals in overruling those assignments and in affirming the judgment of the trial court.

In Case v. Carney, 213 Tenn. 597, 376 S.W.2d 492 [1964], the Court in an opinion by Mr. Justice Holmes, said:

"The appellee has filed in this Court a 'Motion to Dismiss Assignments of Error' upon the ground they do not meet the requirements of Rule 14 of this Court in that the assignments fail to show 'specifically wherein the action complained of is erroneous, and how it prejudiced rights of the appellant' and failed to make 'reference to the pages of the record where the ruling of the court on matters constituting errors of law appears.' Rule 14(2), 209 Tenn. 793, 794.

"The Assignments of Errors, Brief and Argument of appellant substantially comply with Rule 14. Furthermore, as pointed out by the present Chief Justice, in speaking for the Court, in Norton v. Standard Coosa-Thatcher Co., 203 Tenn. 649, 658, 315 S.W.2d 245, 249:

" 'When it appears to the Court that no harm can be done to the one who makes the motion to enforce the Rule and that an injustice would be done by enforcing the Rule, then the Court should use grace and discretion in the administering of the rule.' "

The petition for certiorari substantially complied with Rule 14. We overrule the petition to rehear.