HOWARD *v.* CITY OF CHATTANOOGA.

(*Knoxville,* September Term, 1936.)

Opinion filed November 21, 1936.

JOE FRASSRAND and HARRY A. HITE, of Chattanooga, for plaintiff in error.

J. W. ANDERSON, of Chattanooga, for defendant in error.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

The trial judge sustained a demurrer to a declaration in this suit for personal injuries. The declaration alleged that Howard was a prisoner, convicted of a misdemeanor, who was injured while working out a fine at a rock quarry as the result of the negligence of his boss or guard employed by the municipality. The demurrer denied liability of the City for the alleged negligence because the City was in the performance of a governmental function.

The general rule unquestionably is that a municipality is not liable for injuries resulting from the negligence of its employees in charge of prisoners while confined in its jail or workhouse, and engaged in working out fines. To this effect are leading text-book authorities (19 R. C. L., sec. 404, p. 1125, and McQuillen on Municipal Corporations (2 Ed.), Vol. 6, sec. 2813), supported by numerous decisions: *Nisbet* v. *Atlanta,* 97 Ga., 650, 25 S. E., 173; *Braunstein* v. *Louisville,* 146 Ky. 777, 143 S. W., 372, 42 L. R. A. (N. S.), 538; *Bell* v. *Cincinnati,* 80 Ohio St., 1, 88 S. E., 128, 23 L. R. A. (N. S.), 910; *Browns Adm'r* v. *Guyandotte,* 34 W. Va., 299, 12 S. E., 707, 11 L. R. A., 121; *Curran* v. *Boston,* 151 Mass., 505, 24 N. E., 781, 8 L. R. A., 243, 21 Am. St. Rep., 465; *Evans* v. *Kankakee,* 231 Ill., 223, 83 N. E., 223, 13 L. R. A. (N. S.), 1190; *Carty's Adm'r* v. *Village of Winooski,* 78 Vt., 104, 62 A., 45, Note, 2 L. R. A. (N. S.), 95, 6 Ann. Cas., 436; *Haley* v. *Boston,* 191 Mass., 291, 77 N. E., 888, 5 L. R. A. (N. S.), 1005; *Hughes* v. *Monroe County,* 147 N. Y., 49, 41 N. E., 407, 39 L. R. A., 33; *Gray* v. *City of Griffin,* 111 Ga., 361, 36 S. E., 792, 51 L. R. A., 131; *Warren* v. *Booneville,* 151 Miss., 457, 118 So., 290.

*Ulrich* v. *St. Louis,* 112 Mo., 138, 20 S. W., 466, 468, 34 Am. St. Rep., 372, and *Jackson* v. *Owingsville* (Ky.), 121

S. W., 472, 25 L. R. A. (N. S.), 180 (and see citations in the note following this case), apply this rule specifically to alleged failure to supply the prisoner with a safe place to work or proper tools. The opinion in the *Ulrich Case, supra,* quotes from Dillon on Municipal Corporations the following:

"The city defendant, in conducting its workhouse, cannot be regarded as doing so as a means of profit or private municipal gain or revenue. It is obvious beyond question that the workhouse in this case was erected and conducted for the public good, and imprisonment therein was only the legitimate exercise of suitable police regulations, such as the city undoubtedly had the power to enact."

In support of this rule, we quote from our case of *Combs* v. *City of Elizabethton,* 161 Tenn., 363, 31 S. W. (2d), 691, as follows:

"It is suggested that a municipality does draw emolument from the enforcement of its ordinances in the collection of fines, and that for this reason the arrest of offenders should be treated as the prosecution of a corporate rather than a governmental function. The assessment of such fines, however, is by way of punishing the transgressor—a means of enforcing the law. Money gain derived from the fines is purely incidental."

In the *Combs Case, supra,* Chief Justice GREEN refers to earlier holdings of this court applying the governmental function doctrine to the handling of prisoners by municipal officers (*Pesterfield* v. *Vickers,* 43 Tenn. (3 Cold.), 205, and *Davis* v. *Knoxville,* 90 Tenn., 599, 18 S. W., 254), and, as indicated in the above quotation from his opinion, plainly recognized as incidental only to the enforcement of the law the collection of fines from pris-

oners, and whether in money or work we think immaterial.

▮ Apparently conceding the general rule to be as above stated, counsel for plaintiff below urge an exception when, as here, the prisoner is being worked outside of his usual place of confinement, the jail or workhouse, on the public streets, or at an outside quarry where rock is being procured for general street improvements—contending that such a situation brings the operation by the City under the corporate function classification, with the attendant liability for negligence generally recognized. It is insisted that these facts present a phase of the question not heretofore passed on by this court. Counsel support this view by the citation of one case, *Hillman* v. *Anniston*, 214 Ala., 522, 108 So. 539, 46 A. L. R., 89. However, the minority opinion, concurred in by three out of the seven members of that court, among them the learned Chief Justice, emphasizes that the opinion of the majority is without authority support. The case appears to have been a hard one on its facts in that a prisoner was wrongfully killed by a police guard, and this hard case perhaps induced this erroneous decision. We concur in the following comment thereon in the opinion of the Supreme Court of Mississippi in *Warren* v. *Booneville*, 151 Miss., 457, 118 So., 290, 291:

"Counsel for appellant cite 43 C. J., 967, the text of which is as follows: '. . . Where a prisoner sentenced to work on the street, or upon any enterprise corporate in character, is injured by the wrongful act of the municipal agent superintending such work, the municipality is liable although such agent was a police officer having custody of the prisoner.'

"This is authority for appellant's position, but we

find that only one case is cited in the note, to-wit, *Hillman* v. *Anniston*, 214 Ala., 522, 108 So., 539, 46 A. L. R., 89. This decision was rendered by a divided court, and the dissenting opinion seems to us to be the better reasoning and more in accord with the weight of authority in this country.''

The annotation following this case in 46 A. L. R., reviews numerous cases holding to the contrary.

In the cases above cited, particularly *Bell* v. *Cincinnati, Curran* v. *Boston,* and *Nisbet* v. *Atlanta,* the courts dealt with facts not to be distinguished in principle from those here presented, and all these and other cases emphasize the determinative point that any profit arising from the labor of prisoners working out their time or fines is incidental only to the primary purpose to punish offenders against the state or municipal laws, a purpose which is too clearly a governmental function to admit of question at this late day.

The judgment is affirmed.