Bobo *v.* City of Kenton.

(*Jackson,* April Term, 1948.)

Opinion filed June 12, 1948.

Miles & Miles and John W. Hart, all of Union City, for plaintiff in error.

Taylor, Adams & Freeman, of Trenton, for defendant in error.

Mr. Chief Justice Neil delivered the opinion of the Court.

This suit originated in the Circuit Court of Obion County, in which the plaintiff, Roy Bobo, Jr., sought to recover damages for personal injuries against the City of Kenton.

The declaration alleged, in substance, that on the night of August 24, 1946, at about midnight, he was driving his truck in a lawful manner and was approached by the chief of police, one Corb Barner, who made complaint about a "muffler" on the truck. Following this discussion, which was not in the least unfriendly, it is alleged that "they shook hands" and thereupon the said Barner "backed away from the truck, looked at him and stated: 'I think I am going to shoot hell out of you anyway' "; that he drew out a 38 special and "shot the plaintiff through the right chest, inflicting painful, serious and permanent injuries," etc.

It is further alleged that the City of Kenton for two or three months prior to August 25, 1946, had received numerous complaints about the said Corb Barner and had

been notified by a number of persons (naming them), including a half brother of Barner, "that the said Corb Barner was mentally unstable and a dangerous man to be retained in the office of Chief of Police."

The City of Kenton demurred to the declaration upon the ground that the employment of the chief of police, and his retention in office, was a governmental function and hence there was no liability for his negligent and wrongful acts.

The Trial Judge sustained the demurrer and plaintiff appealed to this Court. His only assignment of error complains that the Court committed error "in holding that the plaintiff's declaration did not state a cause of action against the defendant."

Learned counsel for the plaintiff have failed to cite any authority in support of their contention that "the City of Kenton must be held accountable in keeping an insane man in this position when they had received numerous complaints not only of his insanity but of his dangerous character."

We have searched the books in vain in an effort to find some authority to support the above contention. All cases, without exception, hold that the maintenance of a police force by a municipality is a governmental function and hence is not liable for torts committed by its peace officers.

We are not unmindful of many criticisms of the doctrine, particularly in Brooklyn Law Review, April 22, 1932, entitled "Should the Liability of Municipalities in Tort be Extended to Include Injury and Damage Caused in the Negligent Performance of a Governmental Function?" Also in 75 A. L. R., p. 1196, where the annotator says: "The whole doctrine of governmental immunity from liability for torts rests upon a rotten foundation,"

etc. But the doctrine still stands. This Court has never departed from it, although it may be true that the modern tendency is against the rule of governmental immunity.

A majority of the courts hold that where a city maintains or creates a public nuisance, although it does so while in the discharge of a public duty, or in the performance of a governmental function, it cannot claim immunity. *Knoxville* v. *Lively*, 141 Tenn. 22, 206 S. W. 180.

But in the instant Case we are dealing with the liability of a municipality for the negligence, or wilful wrong, of its chief of police. There is no question but that the employment of a police officer, and also his retention in office, is governmental. Thus we have held that a city is not liable for the torts of its policemen in making arrests. *Pesterfield* v. *Vickers*, 43 Tenn. 205; *Davis* v. *Knoxville*, 90 Tenn. 599, 18 S. W. 254. In the latter case it was held there is no liability "however negligent and tortious" the act may be, citing numerous cases.

Counsel for the plaintiff seek to take this Case out of the general rule by contending that the wrong was in "knowingly" employing the officer, or keeping him employed, with actual knowledge of his insanity and of his dangerous character. The demurrer admits the truth of this contention, but even so, the alleged wrong is within the rule. Insanity is a relative term, as well as the expression "dangerous character."

The question made in the instant case was ruled adversely to plaintiff's contention in *Combs* v. *City of Elizabethton*, 161 Tenn. 363, 31 S. W. (2d) 691, the opinion being by the late Chief Justice GREEN, wherein it was said: "It is sought to take this case out of the authority of those just referred to by reason of the allegation in the declaration that the City of Elizabethton had actual knowledge that this particular policeman was of a violent character

and had previously assaulted divers persons. This, however, is merely a charge of negligence against the city in the matter of selecting its agents for carrying out its laws. Choosing such agents for enforcement of its public laws is clearly a governmental function, and a municipality could not be held liable for negligence about such matter."

The judgment of the Trial Court is affirmed.

All concur.