# JACKSON v. CITY OF PARIS.—228 S. W. (2d) 1015.

Jackson.   October 14, 1949.

Petition for Certiorari denied by Supreme Court, February 10, 1950.

Dudley Porter, of Paris, for plaintiff in error.

Van Dyke & Dunlap, of Paris, for defendant in error.

SWEPSTON, J. This is a suit against the City of Paris and two individuals for damages for personal injuries. The only defendant involved in the present appeal is the City of Paris.

The cause was tried by the Court after a jury trial had been waived, who upon motion of defendant, dismissed the plaintiff's suit on the ground that no negligence of the City was shown. Plaintiff has appealed and assigned this action of the Court as error.

The accident and injury occurred in the following manner.

A strand of 12 gauge soft steel wire accidentally became attached to a truck belonging to one Diggs while

said truck was returning from Kentucky Lake to Paris. The strand was about a quarter mile long. It was detached from the truck at the instance of Diggs after the truck and wire were within the City about 11:00 A.M. and lay in the street until plaintiff undertook to remove it about 5:00 P. M.

Someone called the Chief of Police later on and informed him that the wire was in the street. He telephoned the office of the Superintendent of City Streets who was out, and asked plaintiff to attend to getting the wire removed from the street.

Plaintiff's job was to repair and maintain automotive vehicles of the City and he had never worked on the streets; when the Superintendent was out, plaintiff was in charge of the City garage. In response to the request or order of the Chief of Police he obtained the assistance of the son of the Superintendent who was a laborer on street jobs and they proceeded to remove the wire under plaintiff's directions.

They first pushed the full length of wire from the street into the ditch; they then went to one end of the wire where plaintiff, standing in the ditch, began pulling the wire and winding it on a spool while his helper undertook to flag traffic. As the wire was pulled it flopped about from the ditch to the street. An automobile came along, got entangled in the wire a short distance from the plaintiff and as the wire was pulled by the moving car, it caught around plaintiff's ankle, dragged him thirty feet and against a culvert, cutting his leg to the bone and causing a severe injury and partial disability of the leg and foot.

Plaintiff testified that the Chief of Police told him to remove the wire and the Superintendent had already told

him to do anything the Chief told him to do. That it was Saturday afternoon and he was at the garage only because of a rush job, otherwise he would not have been on duty; that he knew nothing about street work and had never done any. He did not know that when wire is pulled it will flop or jump about.

The declaration charges only two acts of negligence which are set out in plaintiff's brief as follows:

"1. When the Chief of Police of the City of Paris was informed that a wire extended along a city street for a distance of one-fourth of a mile, he should have ordered an experienced street worker to remove the wire from the street. He should not have ordered the plaintiff, who was an automobile mechanic without experience in street work, to enter upon a dangerous service outside of his regular employment without warning advice and instructions from the Chief of Police as to the danger involved. The plaintiff and the Chief of Police testified that the plaintiff received no warning advice and instructions from the Chief of Police as to the danger involved."

"2. While the plaintiff was winding up the wire the Chief of Police should have stationed a traffic policeman at each end of the wire to halt traffic. If this had been done there would have been no accident."

The City plead the general issue, contributory negligence, assumption of the risk, and that the Chief of Police acting as such, was exercising a governmental function and the City would not be liable for his neglect or negligence in the performance of his official duties.

It will be observed at the outset of our discussion that the only negligence charged against the City consists of the alleged acts and failures to act of the Chief of Police.

The argument in behalf of plaintiff is that it is the duty of the City in its private or corporate capacity to construct, maintain and keep free of unlawful obstructions, the City streets.

That under the Code Section 10871 it is a misdemeanor for one to obstruct streets, highways, etc.; that under Code Section 3626 prescribing the duties of the Chief of Police under City Manager charters, such as has the City of Paris, it is the duty of the Chief of Police to prevent violations of law and city ordinances; that in the instant case the Chief of Police in ordering the plaintiff to remove the wire was acting as the agent of the City in the performance of the City's duty to remove the obstruction; that he was, therefore, performing a private or corporate duty and that for his negligence the City would be liable under respondeat superior.

The City's argument is that a police officer's duties are only those provided by law and are purely governmental; that he is not the agent of the city; that, therefore, the City is not liable for his commissions or omissions.

■■ The general rule is stated in Davis v. Knoxville, 90 Tenn. 599, 18 S. W. 254: "Municipal corporations, such as counties, cities, and towns, are arms of the state, to whom has been delegated, for the purpose of local government, a portion of the sovereign power of the state. Such corporations can only act through agents, and, as they are but arms of sovereignty, the principle of respondeat superior does not apply. But when such corporation exists by virtue of a charter, general or special, limiting its powers and prescribing duties, it implicitly contracts to carry out the prescribed purposes of its creation; and if its agents or servants are guilty of negligence while in the discharge of corporate duties

which are for the peculiar benefit of the corporation, in its local or special interest, an action will lie against the municipality, the maxim of respondeat superior applying. Mayor v. Lasser, 9 Humph. 757 [28 Tenn. 757]; Mayor v. Brown, 9 Heisk. 6 [56 Tenn. 6, 24 Am. Rep. 289; Mayor, etc., of City of] Memphis v. Kimbrough, 12 Heisk. 133 [59 Tenn. 133]."

Under the cases cited and many later cases the rule is established that the construction and maintenance of streets in a safe condition is a private or corporate function.

In the last case cited, Mayor, etc., of City of Memphis v. Kimbrough, the City was held liable for the negligence of the wharfmaster on the basis that the keeping of the wharf was entrusted to him by ordinance of the City, that it might well have employed any other servant for that purpose, that he was not acting as a public officer, executing the laws of the State, but an agent or servant of the City acting in a private capacity of maintaining a wharf.

A police officer is not, however, in the usual contemplation of law an agent or servant.

In Cornett v. Chattanooga, 165 Tenn. 563, 56 S. W. (2d) 742, 743, the basis of the decision excluding policemen from the benefits of the Compensation Act is that a policeman is not an employee but is a civil or governmental officer whose duties are prescribed by the general law of the State.

"Though not primarily officers of the state, they (are) so secondarily, being officers of a municipality which (is) itself an arm of the state government. Porterfield v. State, 92 Tenn. 289, 21 S. W. 519."

"It is not the method by which he becomes a member of the police force which fixes his status, but, because of the nature and extent of the duties and responsibilities

with which he is charged, the policeman is recognized by the authorities as a civil officer.''

In Smiddy v. City of Memphis, 140 Tenn. 97, 104, 203 S. W. 512, 513, the legislature had mandatorily directed the City to increase the pay of firemen, but the city had refused to comply. In a suit for the increased pay a recovery was allowed. The Court said: ''. . . The Legislature could employ its entire police force or its entire fire department at such salaries as it should deem wise, directly and without the intervention of the municipality.''

In O'Quin v. Baptist Memorial Hospital, 184 Tenn. 570, 201 S. W. (2d) 694, 697, where the hospital was sued for the death of a violent patient who was shot by a policeman called by a hospital employee, in holding no liability, the Court said: ''The police department is a governmental agency of the City of Memphis; and a municipal corporation is not, in the absence of a statute, liable in damages because of the manner in which its police officers perform or neglect to perform their public duties.'' Nor is any private person or corporation liable if acting lawfully and in good faith.

See also, Bobo v. City of Kenton, 186 Tenn. 515, 212 S. W. (2d) 363, where the city was held not liable for the negligence in employing an officer known to be dangerous and mentally unstable who wantonly shot plaintiff.

■ These cases are all in accord with the very apt and inclusive statement of the annotation in 12 L. R. A., N. S., 537, where it is said:

''In municipal-corporation law no propositions are more thoroughly established than that police officers are not agents or servants of the municipality employing

them, so as to render it responsible for their negligent or illegal acts in discharge of their duties as such officers. These duties do not lie in the line of the special privileges of a municipal corporation as such; they are not imposed for the purpose of promoting the private interests of municipalities in their special corporate rights. These duties are of a public nature, and such as the state itself is interested in. The appointment of the officers by municipalities is only a convenient mode of exercising a function of government. The detection and arrest of offenders, the preservation of the public peace, the enforcement of the laws, and other powers and duties with which police officers are intrusted, are derived from the law of the state, and not from the municipality employing them. In exercising such powers and duties, they act in reality, and in a wide sense, as state officers, and for the mode in which they so act the municipality cannot be held liable. That the acts complained of were done in an attempt to enforce a municipal ordinance or by-law makes no difference. The authority to enact ordinances and by-laws is delegated to the municipality by the sovereign power of the state, and the exercise of the authority gives to such enactments the same force and effect as if they had been directly passed by the legislature. They are public laws, though of a local and limited operation, and, in their enforcement, police officers act in a public capacity and not as municipal agents or servants. The following authorities, which are by no means exhaustive, illustrate the application of the principle:

"In accordance with these principles, a municipality has been held not liable for false imprisonment by police officers (Attaway v. Cartersville, 68 Ga. 740); nor for

illegal arrest (Cook v. Macon, 54 Ga. 468; Gray v. Griffin, 111 Ga. 361 [36 S. E. 792], 51 L. R. A. 131).''

There is nothing in Code Section 3626 to indicate that the Chief of Police is authorized to do other than the usual police functions and duties.. It provides as follows: ''It shall be the duty of the chief of police and the members of the police force to preserve order in the city, protect the inhabitants and property owners therein from violence, crime, and all criminal acts, prevent the commission of crime, violations of law and of the city ordinances, and perform a general police duty, execute and return all processes, notices, and orders of the mayor, city manager, city attorney, and recorder, and all other processes, notices, and orders as in this charter or by ordinance may be provided.''

Nothing in the record indicates that the Chief was acting otherwise than as a police officer performing a governmental function.

██ ██ · We conceive it to be the duty of policemen to preserve order, protect the lives and property of citizens and enforce the laws of the state and ordinances of the city. In doing so it may become necessary for them to direct traffic or prohibit it, to remove obstructions from roads or streets such as the wire in the instant suit or an electric wire broken and fallen into the street, etc. They may do it themselves or through or with the assistance of others without denuding themselves of the status of governmental officers performing a public function.

The duty resting upon the police department to prevent or remove obstructions from a street, sidewalk, road, park or other public place of travel arises out of and is to be performed by him as a civil officer in the interests of safety, health and welfare of the people at

large—independently of the quite different duty of the city to construct, repair and maintain its streets free of obstructions, in its private capacity. Indeed, it would be an odd condition to have the police department engaged in the construction and maintenance of streets.

O'Rourke v. Sioux Falls, 1893, 14 S. D. 47, 54 N. W. 1044, 1046, 19 L. R. A. 789, 46 Am. St. Rep. 760, is a well considered case where a person was injured by reason of the firing of a cannon in the street. A part of the declaration was grounded upon the failure of the police to enforce the ordinance against obstruction of the street, where they stood by and knowingly permitted the violation. The Court said: "But it can hardly be necessary to multiply authorities. The rule of nonliability of a municipal corporation for failure or neglect of its officers to properly perform their police duties is too well established to be debatable. It rests largely, at least, upon the principle already noticed,—that the officers, in the discharge of such duties, are not the agents of the municipality, but of the state. The implied liability of the municipality for failure to keep its streets in repair has generally, but not always, been recognized; but such implied liability, where it is held to exist, has generally been put upon the theory that such duty is imposed upon the corporation itself, and not upon its officers, as agents of the state. Dill Mun. Corp. (4th Ed.) Section 1017."

In the instant suit the Chief of Police did not undertake himself to remove the wire, but called the proper agency of the city—the office of the Superintendent of Streets.

We hold that he was performing a governmental function and that the city is not liable for his alleged negligence relied on in plaintiff's suit.

We deem it unnecessary to discuss the other defenses raised by the pleas.

The assignments are overruled and the judgment of the Circuit Court affirmed at costs of appellant.

Anderson, P. J., and Baptist, J., concur.