JOHN EDWARD COFFMAN, Defendant in Error.

*v.*

CITY OF PULASKI, Defendant in Error.

422 S.W.2d 429.

(*Nashville,* December Term, 1966.)

Opinion filed September 18, 1967.

Petition for Rehearing Denied January 8, 1968.

JOE W. HENRY, JR., of counsel, HENRY, HENRY & LEWIS, Pulaski, for plaintiff in error.

DAVID E. CHEATHAM, Pulaski, for defendant in error.

Mr. Justice Humphreys delivered the opinion of the Court.

This case is here on appeal from a judgment sustaining a demurrer to plaintiff-in-error's declaration, and dismissing his suit.

Plaintiff-in-error sued the City of Pulaski for personal injuries sustained when he was shot by a city policeman trying to capture and arrest him. It was specifically alleged the acts complained of were committed by the City in its governmental capacity, by a policeman with respect to whose employment the City was not negligent; and that the City had not waived its immunity by providing indemnity insurance.

The City's demurrer made the point it could not be held liable for the negligent act of its policeman on the grounds alleged in the declaration.

This demurrer was sustained, and the case is before us on the contention that, while it is well settled law in Tennessee that a municipality cannot be held liable in a tort action for the negligence of one of its policemen in the enforcement of municipal penal ordinances or the penal laws of the State, this Court should overrule these cases and abolish the immunity from tort liability created by them.

This contention is predicated on the grounds that there was no such immunity from liability for tort at

the common law, *Russell v. Men of Devon,* 100 English Reports, Reprint, p. 359, and that this was recognized in Tennessee by our first reported case involving a tort action against a city, *Mayor, etc., of Memphis v. Lasser,* 28 Tenn. 757 (1849). And so the rule exists without common law warrant and should be abolished. Secondly, it is contended the rule is unjust, that this has been recognized by eminent law writers and other jurisdictions, and so we should abolish it.

The City of Pulaski contends that our cases have settled the proposition that police officers are state officers in the enforcement of penal strictures of the state police power so that the governmental subdivisions for whom they immediately act are within the scope of the protection afforded by Article 1, sec. 17 of the Constitution of Tennessee, providing, "suits may be brought against the State in such manner and in such courts as the Legislature may by law direct". And that the legislature has not made any provision for a suit of this character.

We have concluded the judgment of the trial court must be affirmed.

■ The rule that a municipality is immune from liability for the torts of a police officer in enforcing penal ordinances and criminal laws is established in Tennessee by a number of cases. *Pesterfield v. Vickers,* 43 Tenn. 205 (1860) ; *Davis v. Knoxville,* 90 Tenn. 599, 18 S.W. 254 (1891) ; *Combs v. City of Elizabethton,* 161 Tenn. 363, 31 S.W.2d 691 (1930) ; *Bobo v. City of Kenton,* 186 Tenn. 515, 212 S.W.2d 363 (1948) ; *Jackson v. City of Paris,* 33 Tenn.App. 55, 228 S.W.2d 1015 (1950) ; *Howard v. City of Chattanooga,* 170 Tenn. 663, 98 S.W.2d 510 (1936) ; *O'Quin v. Baptist Memorial Hospital,* 184 Tenn. 570, 201

S.W.2d 694 (1947); *Johnson v. City of Jackson,* 194 Tenn. 20, 250 S.W.2d 1, 33 A.L.R.2d 756 (1952); *Mayor and Aldermen of Town of Morristown v. Inman,* 47 Tenn. App. 685, 342 S.W.2d 71 (1960). So the trial judge correctly applied the law to this case.

■ As to the argument that we should abolish this doctrine of immunity because it is without warrant in the common law as adopted in this State by our Constitution, (which adopted the common law of England as in force in North Carolina in 1796), it is sufficient to say that, accepting the plaintiff-in-error's own argument that the common law should be written by judges to meet the needs of the society expected to act thereunder, it lay within the power of the Supreme Court of this state to adopt and promulgate the doctrine of immunity presently under assault and the absence of an English precedent is immaterial to its validity.

But we are not entirely satisfied, in spite of opinions expressed to the contrary, that *Russell v. The Men of Devon,* 100 English Reports, Reprint, p. 359, is not authority sustaining the common law origin of the immunity doctrine. (It is argued the doctrine in the United States, and so in Tennessee, came from this case, but that the case does not support it). For, while it is true Lord Kenyon, Chief Justice, predicated his conclusion against the maintenance of a tort action against a county governmental subdivision primarily on policy and logic, Ashhurst, J., who also wrote an opinion in the case based his decision primarily on the proposition there was no such cause of action as the plaintiff was seeking to maintain. We quote:

"It is a strong presumption that that which never has been done cannot by law be done at all. And it is ad-

mitted that no such action as the present has ever been brought, though the occasion must have frequently happened.''

\* \* \* \* \* \*

''Thus this case stands on principle: but I think the case cited from Brooke's Abridgement is a direct authority to show that no such action could be maintained.'' 100 English Reports, Reprint, pp. 362-363.

And Lord Kenyon closed his opinion on the case with the statement:

''Therefore I think that this experiment ought not to be encouraged; there is no law or reason for supporting the action; and there is a precedent against it in Brooke:'' 100 English Reports, Reprint, p. 362.

It is evident from these quotations the King's Bench was of opinion the action was not maintainable at the common law, in addition to being of opinion the action was not maintainable as a matter of policy.

Nor can we agree with plaintiff-in-error's contention that *Mayor, etc., of Memphis v. Lasser,* 28 Tenn. 757 (1849) first settled the law in Tennessee against the doctrine of immunity we have under consideration, and that the law as thus settled in that case was later departed from without any justification.

While in that case this Court did hold that a municipal corporation was liable to suit for its own tort in digging a cistern occupying about two-thirds of the sidewalk and leaving it uncovered, day and night, without guard or enclosure, and also without light or signal at night, or other precaution to warn pedestrians of the danger to which they were exposed, a liability still recognized and

enforced, the opinion of the court expressly recognized there was no tort liability by reason of the respondeat superior doctrine for public, governmental acts, the doctrine on which the case under consideration is predicated, in this language:

"The court in this case did not err, therefore in tacitly assuming, as a matter of law, that the construction of the work in question was within the scope of the powers conferred, and for the private benefit of the corporation. The principle relied upon to maintain the distinction attempted to be taken by the consel [sic] for the plaintiffs in error is correct, but is altogether misapplied to the facts of the case under consideration. It may be admitted that a corporation exercising a power conferred by law for the benefit of the public would not be liable for the negligence of its agents, if acting within the scope of its authority, and if guilty of no negligence in the discharge of the duties with which it was charged. *The corporation in such case would be upon the footing of a public officer required to perform a duty which could not be discharged without the employment of agents or servants, and to such cases the doctrine of respondeat superior does not apply.* But the plaintiffs in error sustained no such relation to the public as to bring them within the operation of this principle. Their charter is a special franchise for the private benefit and emolument of the city of Memphis, although the public may no doubt be benefited by it. It was held by this court in the case of *Humes v. Mayor and Aldermen* (1 Humph. 403) that a municipal corporation for the government of a town or city is the proprietor of the streets, which it holds as easements, in trust, for the benefit of the corporation, and which it

has the power to grade, pave or otherwise improve.'' (Emphasis supplied) 28 Tenn. 759, 760.

So, while *Mayor and Aldermen of Memphis v. Lasser* is authority for the right to maintain a suit against a municipal corporation for its own torts in its maintaining and keeping safe its streets and sidewalks, it never was authority that the doctrine of respondeat superior might visit vicarious liability on a corporation for the torts of a public officer required by law to enforce the penal aspects of the police power of the state.

As to plaintiff-in-error's contention the rule is so unjust this Court should not wait for legislative attention to it, but should abandon all idea of any immunity and join an alleged throng of indignant judges busily engaged in sweeping away the rule, we point out that although this rule has been under attack, as are all rules of restraint, virtually since its postulation, we find only a very few jurisdictions whose judges have felt they could ignore the policy reason for the rule and install their own ideas of personal justice, independent of legislative action.

In plaintiff-in-error's brief which is evidently intended to be encyclopedic we are referred to only ten states in which this rule has been changed by court action. In consideration of which we are constrained to observe that Tennessee can hardly be accused of keeping bad company when it is aligned with forty states against ten.

And it is of interest that following the opinions in two of the cases cited by plaintiff-in-error, *Moliter v. Kaneland Community,* 18 Ill.2d 11, 163 N.E.2d 89, 86 A.L.R.2d 469 (1959), and *Spanel v. Mounds View School District,* 264 Minn. 279, 118 N.W.2d 795 (1962 Minn.), the legislatures of the two states involved overrode the opinions

and reinstated some of the immunity the courts had abolished.

And it is of further importance, that of the cases cited from the ten jurisdictions only the case of *Hargrove v. Cocoa Beach,* 96 So.2d 130, and *McAndrew v. Mularchuk,* 33 N.J. 172, 162 A.2d 820, 88 A.L.R.2d 1313, had anything to do with law enforcement, and only one of these, the New Jersey case involved a policeman undertaking to make an arrest; a special service policeman, not regularly employed, and shown by the record to be incompetent so that the New Jersey court finally held as an alternate ground that liability could be predicated on the city's negligent employment of an incompetent person.

The Michigan case cited by plaintiff-in-error, *Williams v. City of Detroit,* 364 Mich. 231, 111 N.W.2d 1, was by a court divided four to three. One of the opinions written on the majority side may be unique in that the author, in flexing his moral muscles to the task at hand, went so far as to charge that it was the duty of the courts to act because legislators, primarily responsible, were "totally disinterested or politely amused at the plight of the courts."

In spite of the charge of disinterest and polite amusement levelled at it in this opinion, the Michigan legislature found it necessary to reestablish much of the immunity abolished and so to hamstring the court's opinion.

In considering the question from the standpoint of its justice and injustice we have been forced to consider also the consequences of answering it in favor of plaintiff-in-error. And, since the immunity recognized with respect to police action is the most solidly based of the various aspects of governmental subdivision immunity, the consequence of a ruling in favor of the plaintiff-in-error

would be to sweep away all immunities of this character from all governmental agencies and all charities.

This would result in counties being liable in damages without regard to the law of nuisance for the condition of every public road, bridge and culvert, regardless of their location, general state of improvement, or the financial ability of the county to maintain or repair or improve them. Counties with sheriffs and deputies on salaries could, conceivably, be liable for their torts. School boards would be liable for chuck-holes in playgrounds, or corporal punishment of students by teachers and principals or for any other negligent acts of commission or omission.

Municipalities would become liable for the adequacy or otherwise of their airport authority operations; their fire prevention and extinguishment activities; their ambulance services; and every other conceivable negligent act by any of their agents or employees by which anyone else might be injured.

Cities would be liable if policemen made errors in judgment or conduct in moving and acting with the alacrity and force oftentimes required in headlong and precipitous pursuit of dangerous criminals. There could be liability asserted for "police brutality" in quelling riots, as a consequence of which it is conceivable the entire financial resources of a city might be placed in jeopardy by a multiplicity of suits; some brought to embarrass a municipality in its riot control activities.

A city could be liable for all of the damage that might result if instead of too much police action, by mistake in judgment or from lack of resources, the police service at any particular place and time was inadequate, so that a

riot or mob was not controlled in time. (See Newsweek Magazine, August 6, 1967, article on Detroit city riots.)

If this immunity doctrine were to be swept away, with it would have to go the immunity now recognized in favor of the property of charities, orphanages, hospitals, homes for the aged and indigent, so their trust funds (which could not be replaced) could be seriously impaired and so the vital service of the charity in behalf of the sick and suffering jeopardized or ruined.

There are innumerable other examples that could be made, but these are enough to make it clear to a reasonable mind that this problem is not one for the courts, who cannot pick and choose and expand and limit, but for the legislature.

The final answer to the charge the doctrine is so unjust this Court should not wait on legislative action is that the Tennessee General Assembly has acted. This has been done by enactment of Chapter 374 of the Public Acts of the Eighty-Fifth General Assembly. The caption of this act, which of course is explanatory of its purpose, is:

"An ACT to require municipal corporations or any political subdivision of the State of Tennessee to provide defense and indemnity for employees who may be sued for damages arising out of the performance of their official duties and while in the course of their employment, with certain exceptions, and to authorize the obtaining of liability insurance to cover such employees."

While arguments may arise about this act, it cannot be denied that it shows legislative awareness of the situation, and an intention to deal with it responsibly.

In sum, upon a consideration of the whole panorama of legal precedent in Tennessee and elsewhere, and the policy basis for the immunity rule so often and so well stated as not to require repetition here, and the evidence of legislative awareness, and the rampaging spirit of violence manifested daily in our streets requiring unembarrassed police activity, we are not inclined to overrule cases establishing immunity in a case like this for reasons of supposed personal justice.

Indeed, it may be as the defendant-in-error City contends, that since the immunity under consideration originates in the State Constitution, this question is not open for our consideration on the bare issue of justice or injustice, but only as a constitutional question.

In *Combs v. City of Elizabethton,* 161 Tenn. 363, 31 S.W.2d 691, Mr. Chief Justice Green quoted with approval from *Davis v. Knoxville,* 90 Tenn. 599, 18 S.W. 254, to this effect:

"* * * The preservation of order, the maintenance of sobriety, the arrest and detention of violators of the general law of the state is not for the local and private benefit of the corporation. It draws no private emolument from the enforcement of ordinances carrying out the general policy of the state, and in the exercise of the power incident to all these matters it is but an agency of the state its officers; in effect, officers of the state." 161 Tenn. 365, 31 S.W.2d 691.

This determination police officers are state agents in the enforcement of penal laws and so entitled to the protection of Article 1, Section 17 of our Constitution has been consistently adhered to since it was announced by Justice Lurton in 1891. And coming as it does from the

mind of one of our greatest law writers, a judge whose preeminence resulted in his being elevated to the Supreme Court of the United States, and being vouched for as it was by Mr. Chief Justice Green, another of our judicial luminaries, and adhered to since by other great justices, we find it exceedingly difficult to abandon this interpretation for any of the reasons suggested in plaintiff-in-error's brief. In fact, we see no reason at all to depart from it, and reaffirm it.

The judgment of the trial court is affirmed.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and CRESON, JUSTICES, concur.

Opinion on Petition to Rehear

MR. JUSTICE HUMPHREYS.

A petition to rehear has been filed, reemphasizing the sincerely entertained and strongly argued contention of plaintiff-in-error that this Court should change the rule with respect to municipal non-liability for police action, without regard for the fact the rule has existed for more than a hundred years and is predicated upon a construction of our State Constitution by such justices as Green and Lurton. And without regard for the obvious intention of the General Assembly of Tennessee to deal with this subject, as evidenced by its enactment of Chapter 374 of the Public Acts of 1967.

While we respect the reasoning on which plaintiff-in-error's contention is based, and concede that the petition to rehear presents strong arguments in support of this contention, the Court is still of the opinion expressed, so the petition to rehear is denied.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and CRESON, JUSTICES, concur.