EMERSON ELECTRIC COMPANY,
Employer *v.* Chestley James POWERS, Employee

CA 79-221                                597 S.W. 2d 111

Court of Appeals of Arkansas
Opinion delivered March 26, 1980
Released for publication April 16, 1980

*Cathy, Goodwin, Hamilton & Moore* and *Donis B. Hamilton,* for appellant.

*Dewey Moore,* for appellee.

GEORGE HOWARD, JR. Judge. Appellee sustained a compensable injury to his eye when hot metallic aluminum splashed in his face. Since the accident, appellant has not been able to judge distance and read signs along the highway; he has a nervous condition and his ability to drive an automobile has been affected appreciably.

Dr. Bobby Earl McKee, an ophthalmologist,[1] testified that while appellee had an estimated impairment of 8.5% to the right eye and 16.4% impairment to the left eye, these

---

[1] An ophthalmologist is a physician who specializes in the diagnois and treatment of eye disorders. 2 Attorneys' Dictionary of Medicine, page 0-28.

figures did not actually represent the total visual impairment sustained by the claimant; that claimant's visual efficiency was 62% and, consequently, his visual loss was 38%; that this visual loss represents a combination or cumulative impairment to both eyes, as distinguished from the sum of the impairment of each eye separately totaling only 24.9%.

Dr. McKee also testified:

"A. Visual efficiency is measured by the ability to see objects, the ability to see objects in different fields of vision, and the ability to use the two eyes together. That's the measure of visual efficiency."

"A. . . . Now, as I explained to the people when I talked to them on the phone; you don't normally estimate the visual efficiency of one eye alone. You have a combination of the two eyes, and with the combination of the two eyes, the American Medical Association has a form that the worst eye is multiplied, I think, by two, or the best eye is multiplied by two; then you divide that by three or four, but it is more complicated than just the visual efficiency of each eye; so, we really don't use the visual efficiency of each eye because that's really not an evaluation of his visual efficiency. His visual efficiency is not of each eye alone. His visual efficiency is of the two eyes.

As I explained to them, that's really not an important figure at all there. It's not a true estimate of his visual efficiency."

. . . .

"A. Because visual efficiency, as I explained to them is not visual efficiency of one eye because when you calculate the visual efficiency of one eye, then it assumes that that is just one eye; so, when you add the two eyes together it changes because the visual efficiency of the worst eye is given added weight around the calculation."

In articulating the impropriety in computing claimant's

visual efficiency by computing each eye separately, as suggested by appellant-respondent, Dr. McKee said:

"A. It represents the percent visual efficiency of each eye, assuming he had no relationship to the other eye; meaning that if this were his only eye, then that would be the visual efficiency of that eye. You can not do that when a person has two eyes because there is always a relationship to the other eye."

The Administrative Law Judge, in relying upon the testimony of Dr. McKee, found that appellee's visual impairment to both eyes was 38%.

The Full Commission found that claimant sustained an 8.5% loss of vision to the right and a 16.4% loss of vision to the left eye entitling him to 24.9 weeks for loss of vision. In other words, the Commission rated each eye separately and did not give any consideration to the cumulative or combined effect of the injuries to claimant's visual efficiency.[2]

The Circuit Court of Green County, in reversing the Commission, stated:

"The Type of injury is partial loss of vision in both eyes.

"A literal, technical, mechanical application of the law (statutory as interpreted by case law) would require an affirmance of the Commission.

"The medical testimony established beyond dispute that claimant has sustained an 8.5% loss of vision in his right eye and a 16.4% loss to his left eye. The Commission added those percentages and assigned a

---

[2] A Dr. George A. Haynes, an optometrist, submitted a report to respondent stating, in part, "Assuming that his vision before the injury was 20/20 in each eye, there is a lost (sic) of 16.4% in the right eye and 8.5% lost (sic) in the left eye."

Optometry is a field of practice dealing with the measurement of the eye with regard to its visual sharpness, focusing power and the need for eye glasses. 2 Attorney's Dictionary of Medicine, page 0-35.

disability of 24.9%. Its arithmetic seems unassailable. But the medical testimony further establishes that visual efficiency is determined by interaction of *both* eyes, thus producing a result which differs from the sum of the percentages just stated. In other words, because of the nature of human vision, this disability represents an exception to the mathematical rule that the whole is equal to the sum of all its parts. The undisputed proof in this case is that $16.4 + 8.5 = 38$. While that computation might offend mathematical purists, it is the only one that will accomodate the undisputed evidence in this case."

Ark. Stat. Ann. § 81-1313(c) provides:

(c) An employee who sustains a permanent injury scheduled in this subsection shall receive, in addition to compensation for the healing period, sixty-six and two thirds per cent (66 ⅔%) of his weekly wage for that period of time set out in the following schedule:

. . .

(14) Eye enucleated, in which there was useful vision, one hundred (100) weeks;

. . .

(19) Loss of per centum of vision: Compensation for the permanent loss of eighty per centum (80%) or more of the vision of an eye shall be the same as for the loss of an eye. In all cases of permanent loss of vision, the use of corrective lens may be taken into consideration in evaluating the extent of loss of vision;

. . .

(22) Partial loss or partial loss of use: Compensation for permanent partial loss or loss of use of a member shall be for the proportionate loss or loss of use of the member.

It is clear from the medical evidence claimant's visual efficiency has been impaired to the extent of 38%. It is plain that one's visual efficiency is not determined by evaluating the visual efficiency of each eye separately. Dr. McKee testified there is always a direct and integrated relationship between one's eyes. Of course, it goes without saying an evaluation of one's visual efficiency by rating each eye separately either assumes that the eyes have no relationship to each other or the claimant, as in the instant case, has only one eye. Under the calculations of the Commission, claimant stands to be uncompensated for visual impairment to the extent of 13.1%, amounting to, in terms of dollars, $1,650.60.

In 99 C.J.S., Workmen's Compensation § 308, pages 1113 and 1114, it is provided:

"It has been recognized that to compute an award for multiple injuries by simply adding the amounts for each injury considered separately may be unfair where the cumulative result of the separate injuries is a significant additional injury; . . ."

"Where multiple injuries affecting members of the same extemity result in disability to the extremity other than that occasioned by the disability of the members, the award should be based on the disability of the extremity as a whole. . . ."

The better view, and, perhaps, more in acccord with the beneficient purpose of the Workers' Compensation Law, recognizes the cumulative or combined effect of injuries and compensates for such upon the basis of the percentage of permanent disability found to be produced by the several injuries considered collectively, providing there is competent medical evidence to show such disability. *Elk City Cotton Oil Co.* v. *State Industrial Commission, et al,* 185 Okl. 503, 88 P. 2d 615, 618; *Wetherbee Electric Co., et al* v. *Carmichael, et al,* 194 Okl. 121, 148 P. 2d 188; *Consumers Co-op Ass'n, et al* v. *Titus, et al,* 201 Okl. 344, 205 P. 2d 1162, 1164; *Porter* v. *Alfred S. Amer. Co.,* 83 So. 852 (La. 1920); *Franklin* v. *L. Highway Comm.,* 152 So. 604 (La. Court of Appeals 1934); *Alabama By-Products Corp.* v. *Winters,* 176 So. 183 (Ala. 1937); *Coffman* v. *City of*

*Pulaski,* 422 S.W. 2d 429 (Tenn. 1967); 11 Schneider, Workmen's Compensation § 2318, page 510.

In 2 Larson, Workmen's Compensation Law, § 58.20, page 10-212, the following observation is made:

> ". . . [I]n recent years, there has developed . . . the view that scheduled allowances should not be deemed exclusive whether the issue is treatment of a smaller member of a percentage loss of a larger, or treatment of any scheduled loss as a partial or total disability of the body as a whole."

We are persuaded that the facts bring this case within the scope of Ark. Stat. Ann. § 81-1313(c)(14) and the circumstances warrant the allocation of a total schedule to two hundred (200) weeks for both eyes which sustained a combined impairment of 38%, aggregating seventy-six (76) weeks of compensation. We do not believe, as the trial court so believed, that an award determined by adding partials taken spearately adequately compensates claimant for his loss.

In *Vishney* v. *Empire Steel & Iron Co.,* 95 Atl. 143, claimant sustained an 80% partial and permanent loss to both eyes. The trial court determined the number of weekly benefits that claimant should receive by considering each eye separately. The Supreme Court of New Jersey, in reversing the trial court, state that claimant was entitled to compensation under a provision of the Act fixing compensation for complete disability and loss of both eyes, and because there was some usefulness remaining, the compensation should bear such relationship to the amount stated in the schedule as the disabilities bear to those produced by the injury named in the schedule.

In clarifying its holding in *Vishney,* the New Jersey Supreme Court in *Orlando* v. *F. Ferguson & Son,* 102 Atl. 155, made the following comment:

> "We think the true rule is that in the case of a partial but permanent loss of the usefulness of both hands, or both arms, or both feet, or both legs, or both eyes, or

any two thereof, compensation shall bear such relation to compensation for total and permanent disability as the partial but permanent disabilities collectively bear to total and permanent disability. . . ."

The Arkansas Supreme Court has emphasized that the Workers' Compensation Act is remedial legislation and, consequently, should be broadly and liberally construed and doubtful cases should be resolved in favor of the claimant. *Shaw* v. *Keeshin Poulty Co.,* 227 Ark. 90, 296 S.W. 2d 400 (1956).

In *International Paper Company* v. *Tidwell,* 250 Ark. 623, 466 S.W. 2d 488 (1971), the Court stated:

" ' . . . Liberality of construction with reference to individual rights under our acts is resorted to whenever obscurity of expression or inept phraseology appears and, given a restrictive construction, would have the effect of defeating praiseworthy purposes that undoubtedly actuated our lawmaking body.' "

We are convinced that the holding of the Commission was not supported by substantial evidence and the trial court was correct in reversing the Commission. Accordingly, we affirm the Circuit Court of Greene County.

Affirmed.

NEWBERN, J., dissents.

DAVID NEWBERN, Judge, dissenting. I would be pleased to interpret our statute liberally if I could find in it language to interpret which could possibly lead to the conclusion the majority has reached.

Rather than "visual efficiency" which this court seems to attempt to measure in the majority opinion, our statute, as the majority notes, deals only with the loss of "an eye," or loss of vision of "an eye." I note that the New Jersey case cited by the majority was based on a statute "fixing compensation for complete disability and loss of both eyes" which

our statute does not do. I also cannot help but observe that the Arkansas General Assembly knows how to increase compensation for loss of two body members which work together or perform the same function. Ark. Stat. Ann. § 81-1313(c) (15)(Repl. 1976) provides compensation for loss of hearing in one ear at 40 weeks compensation. Section 1313(c) (16) provides 150 weeks for loss of hearing in both ears. Section 1313(c) (17) provides 50 weeks compensation for loss of one testicle and 150 weeks for loss of both testicles. These provisions are in the very same schedule of injuries which makes no such provision for the eyes.

While I sympathize with the majority's motives, I do not find this to be a matter of interpretation. The majority is legislating to make our statute as they would have it, despite the obvious intent of the body charged with that function. Thus, I respectfully dissent.

Supplemental Opinion on Denial of Appellee's
Motion for Clarification delivered June 25, 1980

PER CURIAM. While we deny appellee's motion to issue a supplemental order in this action, we deem it expedient to state that our opinion of March 26, 1980, and the mandate issued pursuant thereto on April 15, 1980, do not preclude the trial court from exercising its inherent and discretionary power to correct errors appearing in its orders or judgments, when such errors were not made an issue, as in the instant case, on appeal.