IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
JUNE 23, 2009 Session

## STATE OF TENNESSEE *ex rel* JANET MORROW v. JERRY N. MORROW, JR.

### Direct Appeal from the Chancery Court for Lawrence County
No. 8613-97    Robert L. Holloway, Chancellor

### No. M2008-01968-COA-R3-CV - Filed July 30, 2009

The State of Tennessee *ex rel.* Mother filed a petition to modify the parties' parenting plan. Finding the petition unfounded, the chancery court ordered Mother to pay Father's attorney fees. However, upon learning that Mother could not be required to pay such fees, the chancery court assessed Father's attorney fees against the State. We reverse.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Reversed

ALAN E. HIGHERS, P.J.,W.S., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; Warren A. Jasper, Senior Counsel, Nashville, TN, for Appellant

Randy Hillhouse, Lawrenceburg, TN, for Appellee

## I. FACTS & PROCEDURAL HISTORY

Janet Morrow ("Mother") and Jerry N. Morrow, Jr. ("Father") were divorced in the Chancery Court of Lawrence County, Tennessee, on September 3, 1997. A permanent parenting plan was entered on January 22, 2008, naming Mother as the primary residential parent of the parties' two youngest children and naming Father as the primary residential parent of the parties' oldest child.[2] The parenting plan ordered Father to pay $362.00 in monthly child support to Mother. However, acknowledging that Father had overpaid child support from July 3, 2007, through December 7, 2007, in the amount of $2,446.00, the parenting plan ordered that Father receive a monthly credit of $100.00 until the overage was offset. Therefore, Father was to pay $262.00 monthly in child support for the next approximately twenty-three months.[3]

According to the "Agreed Statement of the Evidence" submitted on appeal, on March 14, 2008, Mother "went to the Office of the District Attorney, Child Support Division, the local IV-D office" seeking a garnishment of Father's wages. Thereafter, on May 13, 2008, the State of Tennessee (the "State") *ex rel*. Janet Morrow filed a "Petition for Modification," alleging that since the entry of the January 22, 2008 parenting plan "there ha[d] been a significant variance between the Tennessee Child Support guidelines and the amount of child support ordered," and requesting that Father's child support be paid by income assignment. At some point, the IV-D child support office entered a wage assignment against Father for $362.00 per month. Father answered, denying the existence of a significant variance since entry of the parenting plan, and seeking $1,500.00 in damages as well as a finding of contempt against Mother for having the full $362.00 deducted from Father's income "when she was fully aware that [Father] should only be paying [$262.00] per month[.]"

A hearing was held on July 15, 2008. According to the "Agreed Statement of the Evidence," the State, at the hearing, explained that the parenting plan noted Father's "over-payment credit," while the income shares worksheet did not, and the State claimed that modification was requested to reconcile the two. However, the State "conceded that possibly the Motion should have been a Motion to Clarify." The "Agreed Statement of the Evidence" further provides:

---

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[2] The "Permanent Parenting Plan Order" states that it "modifies an existing Parenting Plan[.]" However, no prior parenting plan is included in the record.

[3] Father's "credit" was reduced by $155.00 to reflect Mother's overpayment of an orthodontist bill.

When services were applied for with the State IV-D Child support office, a wage assignment was issued and the first payment was received by wage assignment at the Central Child Support Receipting Unit on March 24, 2008. The only proof at the hearing held on July 15, 2008, concerning a variance in the Child Support Guidelines was to the effect that [Father] was making less money than when the child support was set.

At the hearing on July 15, 2008, the Court heard proof as to the allegations contained in the Answer and the Counter-Claim and found that the January 22, 2008, Judgment was correct. The court found that [Mother] knew she should have been receiving $262.00 out of the pay check of [Father]. The Court found that the explanation of the State concerning the payroll deduction of $362.00 rather than $262.00 was unfounded. The Court ruled that [Father] was to pay $262.00 until the over payment had been absorbed and then he should pay $362.00. The court specifically found that [Mother] had abused the system by having the District Attorney's Office for IV-D child support file an action against [Father] that should not have been filed and that [Father] had been wronged by having to hire an attorney to defend the frivolous action. The Court found that [Mother] should be ordered to pay the damages incurred by [Father] because of the acts of [Mother], but set those damages at $500.00, for the attorney's fees of [Father], rather than the requested sum $1500.00. The State then asked the court to reconsider the attorney's fees due to the [Mother] being a IV-D applicant and the law says attorney fees cannot be taxed to the IV-D applicant. The court found that if [Mother] could not be taxed with damages for her actions, then the District Attorney's office should be responsible for paying the sum of $500.00 to [Father's attorney].

On August 12, 2008, the trial court entered an order assessing the $500.00 attorney fee against the State of Tennessee District Attorney's Office. The State filed a "Notice of Appeal" on September 2, 2008.

## II. ISSUES PRESENTED

The State has timely filed its notice of appeal and presents the following issues for review:

1. Whether sovereign immunity bars the imposition of attorney fees in a judgment against the state; and

2. Whether the trial court erred in awarding sanctions, which improperly violates Rule 11's "safe harbor" provision.

Additionally, Father raises the following issue:

3.      Whether Mother could have been ordered to pay Father's attorney fees.[4]

For the following reasons, we reverse the trial court's award of attorney fees against the State.

### III.   STANDARD OF REVIEW

The issues presented for our review are questions of law.  We review a trial court's conclusions of law under a *de novo* standard upon the record with no presumption of correctness. ***Union Carbide Corp. v. Huddleston***, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).

### IV.   DISCUSSION

### A.   Sovereign Immunity

Finding Mother's petition for modification unfounded, the trial court initially ordered Mother to pay Father's attorney fees.  However, upon learning that Mother, as an applicant for Title IV-D child support services,[5] could not be ordered to pay such fees, the trial court ordered the State to pay Father's $500.00 attorney fee.  On appeal, the State argues that the trial court erred in assessing attorney fees against it because the State has not waived sovereign immunity to permit the assessment of attorney fees against the State.

Under the doctrine of sovereign immunity, the state may not be sued in its courts without legislative consent. ***Wells v. Tenn. Bd. of Regents***, 231 S.W.3d 912, 916 (Tenn. 2007) (citations omitted).  In *Spencer v. Cardwell*, 937 S.W.2d 422, 423 (Tenn. 1996), our Supreme Court explained:

> The rule of sovereign immunity in this state is both constitutional and statutory. Article I, Section 17 of the Tennessee Constitution provides in part that "Suits may be brought against the State in such a manner and in such courts as the Legislature may by law direct."  This section has been interpreted as a grant of sovereign immunity to the state, and, accordingly, no suit against the State may be sustained absent express authorization from the Legislature. *Coffman v. City of Pulaski*, 220 Tenn. 642, 422 S.W.2d 429 (1967).

---

[4]  We note that Father raises this issue in the "Conclusion" section of his brief.

[5]  Tennessee Code Annotated section 36-5-101(l)(2) provides, in relevant part:

The court shall not award attorney fees against the department, the Title IV-D contractor or any applicant for child support services, unless there is a clearly established violation of Rule 11 of the Tennessee Rules of Civil Procedure or for other contemptuous or other sanctionable conduct.

This constitutional prohibition was codified at Tennessee Code Annotated 20-13-102(a), which provides that

> No court in the state shall have any power, jurisdiction, or authority to entertain any suit against the state, or against any officer of the state acting by authority of the state, with a view to reach the state, its treasury, funds, or property, and all such suits shall be dismissed as to the state or such officers, on motion, plea, or demurrer of the law officer of the state, or counsel employed for the state.

In *State ex rel. Allen v. Cook*, 106 S.W.2d 858, 860-71 (Tenn. 1937), our Supreme Court stated:

> Article 1, Section 17, of the Constitution delegating to the Legislature the power to authorize suits against the state, being in derogation of the state's inherent exemption from suit, must itself be strictly construed; hence legislation authorizing suits against the state must strictly pursue the constitutional requirements, and be so plain, clear, and unmistakable in its provisions as to the manner and form in which such suits may be brought as to leave nothing to surmise or conjecture.

Therefore, no suit may be maintained against the State unless the legislature consents to such suits in "plain, clear, and unmistakable" language. ***See Phillips v. Marion County***, 59 S.W.2d 507, 508 (Tenn. 1933).

On appeal, Father claims that the trial court correctly required the State to pay Father's attorney fees pursuant to Tennessee Code Annotated section 36-5-101(l)(2) which provides that an award of attorney fees can be made against "the department [of human services], the Title IV-D contractor or any applicant for child support services" where "there is a clearly established violation of Rule 11 of the Tennessee Rules of Civil Procedure *or* for other contemptuous or other sanctionable conduct." (emphasis added). Father concedes that Rule 11 is inapplicable to the instant case;[6] however, he maintains that the State's conduct in filing Mother's petition for modification was "contemptuous or other[wise] sanctionable conduct" for which attorney fees may be assessed. We disagree. The trial court's order assessing attorney fees against the State fails to categorize the award as "sanctions" or the State's conduct as "contemptuous." Rather, according to the "Agreed Statement of the Evidence," the court found that *Mother* had abused the system and that *she* should be required to cover Father's damages. Absent a finding of sanctionable or contemptuous conduct by the State, we find that an award of attorney fees against the State pursuant to Tennessee Code Annotated section 36-5-101(l)(2) was inappropriate.

---

[6] On appeal, the State argues that if attorney fees were assessed pursuant to a Rule 11 violation, that the requirements of Rule 11, specifically its "safe harbor" provision were not followed. Having found that attorney fees were not imposed pursuant to Rule 11, we need not address this issue on appeal.

Additionally, Father claims that the trial court correctly assessed attorney fees against the State pursuant to its "chancery powers." As we stated above, the state's sovereign immunity is waived only where the legislature has consented to be sued by its "plain, clear, and unmistakable" language. The authority of chancery courts in this state to correct wrongs does not provide a clear waiver of sovereign immunity. Finding that neither Tennessee Code Annotated section 36-5-101(l)(2) nor the trial court's "chancery powers" authorize an award of attorney fees against the State in the instant case, we reverse the trial court's assessment of attorney fees against the State.

### B. Title IV-D Applicant

In the "Conclusion" section of his brief, Father states that the trial court's assessment of attorney fees against the State should be upheld, or, alternatively, that Mother should be ordered to pay Father's attorney fees. Father provides no argument as to why Mother, a Title IV-D applicant for child support services, is not protected against the imposition of such fees by Tennessee Code Annotated section 36-5-101(l)(2). Having failed to provide a sufficient argument concerning this issue, as required by Tennessee Rule of Civil Procedure 27(a), we find that Father has waived this issue on appeal. *See Boggs Kurlander Steele, LLC v. Horizon Commc'ns*, No. M2006-00018-COA-R3-CV, 2008 WL 490628, at *4 (Tenn. Ct. App. Feb. 21, 2008) (citing *Newcomb v. Kohler Co.*, 222 S.W.3d 368, 402 (Tenn. Ct. App. 2006); *see also Rector v. Halliburton*, No. M1999-02802-COA-R3-CV, 2003 WL 535924, at *9 (Tenn. Ct. App. Feb. 26, 2003) (per curiam); *Rhea County v. Town of Graysville*, No. E2001-02313-COA-R3-CV, 2002 WL 1723681, at *7 (Tenn. Ct. App. July 25, 2002)).

### V. CONCLUSION

For the aforementioned reasons, we reverse the chancery court's assessment of attorney fees against the State. Costs of this appeal are taxed one-half to the Appellee, Jerry N. Morrow, Jr., and one-half to the Appellant, Janet Morrow, for which execution may issue if necessary.

_____

Alan E. Highers, P.J., W.S.